STATE of Iowa, Plaintiff–Appellee,

v.

Bryan Michael FIX, Defendant–
Appellant.

No. 12–1068.

Court of Appeals of Iowa.

April 10, 2013.

Mark C. Smith, State Appellate Defender, and Matt Jarvey, Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Thomas Tauber, Assistant Attorney General, Michael J. Walton, County Attorney, and Amy Devine, Assistant County Attorney, for appellee.

Heard by VAITHESWARAN, P.J., and TABOR and MULLINS, JJ.

TABOR, J.

Iowa case law observes a one-death, one-homicide rule—prohibiting a trial court from entering judgments and imposing sentences for multiple homicide offenses if the defendant was convicted for killing only one person. Our supreme court's two applications of the rule have followed jury verdicts. *See State v. Wissing*, 528 N.W.2d 561, 567 (Iowa 1995); *State v. Gilroy*, 199 N.W.2d 63, 68 (Iowa 1972). The question in this case is whether by accepting a plea agreement that called for consecutive sentences to be imposed on two homicide offenses for one death, Bryan Fix waived the protection of the one-homicide rule.

Finding Fix did not relinquish his right to invoke the one-homicide rule by entering his guilty pleas, we annul and set aside the judgment and sentence entered upon his conviction for involuntary manslaughter.

## I. Background Facts and Proceedings

On November 18, 2009, Stephanie Kloppenborg left her three children in the overnight care of her boyfriend Bryan Fix. Fix was the biological father of her two older children, but not the father of C.K., who was born in September 2009. Kloppenborg fed C.K., changed his diaper, and then left for work at 8:30 p.m. When she returned home the next morning, Fix met her on the stairs, telling her there was something wrong with the baby. C.K. was limp and gasping for air.

Doctors at University of Iowa Hospitals and Clinics diagnosed C.K. with a large, hyperacute subdural hematoma, diffuse multilayered retinal bleeds, and eight rib fractures. The doctors opined the head injury occurred immediately before the infant became symptomatic, the morning of November 19, 2009. The doctors believed three of the eight rib fractures were inflicted two to three weeks earlier. C.K. died after being removed from life support on November 25, 2009. An autopsy showed the cause of death to be complications from head injuries sustained on November 19.

On December 9, 2009, the State prepared a three-count trial information charging Fix with murder in the first degree, in violation of Iowa Code sections 707.1, 707.2(2), and 707.2(5) (2009); child endangerment resulting in death, in violation of section 726.6(4); and child endangerment, multiple acts, in violation of section 726.6A.

Eight months later, the State and Fix entered a written memorandum of plea agreement, outlining the following charging concessions: count one was amended from first-degree murder, a class "A" felony, to involuntary manslaughter, a class "D" felony, which carried a five-year sentence; count two remained child endangerment resulting in death, a class "B" felony, which carried a fifty-year penalty; and count three was amended from multiple acts of child endangerment, a class "B" felony, to child endangerment resulting in serious injury, a class "C" felony, which carried a ten-year sentence. The parties agreed "the sentences are to run consecutively, for a total of 65 years." The court's

concurrence with the agreement was a condition of the acceptance of the plea. The county attorney, the defendant, and defense counsel all signed the agreement.

The court held a plea hearing on August 4, 2010. Fix personally acknowledged his understanding of the plea agreement, including the recommendation for consecutive sentences. Fix entered pleas of guilty to all three offenses, admitting that he "forcibly handled the child in a manner that resulted in the child receiving a subdural hematoma that resulted in the child's death." Fix also acknowledged engaging in "physical action toward the child that resulted in the child sustaining fractures to the child's ribs."

The district court signed a calendar entry on the same day, accepting the guilty pleas and indicating it would "embody in the judgment and sentence the disposition provided for in the Plea Agreement or another disposition more favorable to the Defendant than that provided for in the Plea Agreement."

At the September 2, 2010 sentencing hearing, the defense counsel told the court that "the plea agreement is pretty clear as to what the parties' position was with regard to sentencing." Fix told the sentencing court he had nothing to say. The court noted the plea agreement called for consecutive sentences and both the State and the defendant agreed to that result. Based on the plea agreement, the court imposed consecutive terms for a total indeterminate sentence of sixty-five years.

On April 30, 2012, Fix filed a pro se motion to correct an illegal sentence, alleging count one (involuntary manslaughter) and count three (child endangerment resulting in serious injury) should have merged into count two (child endangerment resulting in death). The motion discussed the "impossibility test" for lesser

included offenses, but did not mention the one-homicide rule. The State filed a resistance on May 3, 2012, alleging the three counts were for "three specific and different acts" and resulted from a favorable plea agreement. The court denied the motion on May 10, 2010, finding the offenses were "separate and distinct" and did not merge. Fix filed a pro se notice of appeal on May 31, 2012.

## II. Standards of Review

We review Fix's sentencing claim for legal error. *See State v. Ruesga,* 619 N.W.2d 377, 380 (Iowa 2000) (reviewing common law year-and-a-day rule for errors at law). Fix contends to the extent his claim involves a deprivation of constitutional rights, our review would be de novo. Because we find the one-homicide rule to be independent of double jeopardy protections, we do not entertain that alternative standard of review.

## III. Analysis

### A. Arguments on Appeal

Under Iowa law, when a defendant is convicted of separate homicide counts involving a single victim, judgment can be entered and sentence can be imposed for only one homicide offense. *Wissing,* 528 N.W.2d at 567 (setting aside conviction for involuntary manslaughter where defendant was also convicted of vehicular homicide but only one death occurred); *Gilroy,* 199 N.W.2d at 68 (annulling conviction of premeditated murder because life sentences for felony murder and premeditated murder constituted impermissible double punishment). In holding that a defendant who kills one person cannot be convicted and sentenced for two separate homicides, Iowa follows the prevailing view among

state courts.[1] *See Ex parte Rice*, 766 So.2d 143, 151–52 (Ala.1999) (collecting cases); *Ervin v. State*, 991 S.W.2d 804, 807–09 (Tex.Crim.App.1999) (same).

In this appeal, Fix alleges the entry of judgment and imposition of sentence on both involuntary manslaughter and child endangerment resulting in death violated the one-homicide rule recognized in *Wissing* and *Gilroy*. He asks us to annul and set aside the judgment and sentence on his involuntary manslaughter conviction for unintentionally killing C.K. Because his actions resulted in only one death, he contends imposition of consecutive terms under the plea agreement was an illegal sentence. Fix also contends an illegal sentence is not subject to the usual requirements of error preservation.

The State does not contest error preservation, agreeing alleged sentencing errors need not be raised in the trial court. The State lobbies for an exception to the one-homicide rule in this plea-bargain case where Fix agreed to consecutive sentences and "received a benefit—a substantial charging concession—as a result." The State asserts Fix waived the *Gilroy* rule by entering a voluntary plea agreement. The State relies on *State v. Birkestrand*, 239 N.W.2d 353, 363 (Iowa 1976), for the proposition that the protection against double punishment is a "waivable privilege." The State urges recognizing such a waiver would prevent the defendant from "trifling with the courts by attempting to better [his plea] bargain through the appellate process."

In his reply brief, Fix contends even if *Birkestrand* stands for the proposition that the *Gilroy* rule can be waived, waiver is an intentional relinquishment of a known right, and the prosecution bears the burden of affirmatively showing he intended to relinquish his protection from double punishment for a single homicide. Fix notes he did not have specific information about the potential waiver of the one-homicide rule before entering his guilty plea. Fix argues under *State v. Woody*, 613 N.W.2d 215, 218 (Iowa 2000), the parties may not rely on a plea agreement to uphold an illegal sentence, and the State is the party which "bears the consequences" of a faulty assumption that the bargained-for sentence was legal.

At oral argument, the State disagreed with Fix on the proper remedy if we determine the plea agreement did not waive the protections of the one-homicide rule. The State believes it should be allowed to reinstate the original charge of first-degree murder or negotiate a new plea with Fix.

### B. History of Iowa's Single–Homicide Rule

In analyzing the parties' positions, it makes sense to start with the origin of our state's one-homicide rule. *Gilroy* appears to be the first Iowa case to adopt the principle that a court may not impose multiple judgments and sentences for homicide offenses arising from one death. That case, which predated Iowa's 1978 criminal code revision, involved one conviction for murder in the preparation of robbery and one conviction for premeditated murder for the same death. *Gilroy*, 199 N.W.2d at 64. Although Gilroy did not challenge his sentences for both convictions either at trial or on appeal, our supreme court cited to two secondary sources—21 Am.Jur.2d *Criminal Law* § 546 and 24 C.J.S. *Criminal Law* § 1567(5)—as authority for hold-

---

1. A minority of jurisdictions have held that variations of murder can support multiple convictions even though the defendant killed only one person. *See, e.g., Steckel v. State,* 711 A.2d 5, 12 (Del.1998) (refusing to merge convictions for intentional murder and reckless felony murder).

ing the "double punishment" could not be allowed to stand. *Id.* at 68.

Those sources do not shed a great deal of light on the origins of the one-homicide rule. The American Jurisprudence compilation for criminal law generally discussed the prohibition against multiple penalties for several counts arising from the commission of the same offense, noting: "[F]or separate offenses charged in one indictment to carry separate punishments, they must rest on distinct criminal acts." 21 Am.Jur.2d *Criminal Law* § 546, at 522 (1965). Similarly, the restatement of the criminal law in the Corpus Juris Secundum provided: "If several counts of the indictment on which accused stands convicted in effect charge only one offense, ... it is erroneous for the court, on a finding of a general verdict or a plea of guilty, to impose separate penalties for the several counts...." 24 C.J.S. *Criminal Law* § 1567(5) (1961).

Iowa's second application of the one-homicide rule came more than two decades later when the supreme court decided in *Wissing* that judgments and sentences for both vehicular homicide and involuntary manslaughter, while not constituting the same offense under the double jeopardy test in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), could not be permitted under the *Gilroy* holding. *Wissing,* 528 N.W.2d at 567. The court articulated the rule as follows: "Generally, a defendant who is convicted of distinct offenses may be punished for both. However, where the offenses arise from one homicide, we permit sentencing on only one of the homicide offenses." *Id.*

From what we can tease out of the spartan analyses in *Gilroy* and *Wissing,* we conclude Iowa's one-homicide rule is a creature of common law. And while the one-homicide rule undoubtedly guards against like excesses in sentencing, it is not technically rooted in either the constitutional double jeopardy clauses or the merger statute at Iowa Code section 701.9. Because its protection is sui generis, it is difficult to tell how broadly our supreme court intended to apply the one-homicide rule.

We do think it is significant that in both *Wissing* and *Gilroy,* the supreme court applied the one-homicide rule without a claim being raised by the parties. *See id.* ("Although Wissing has not challenged on appeal the two convictions arising from only one homicide, we believe this issue should be addressed."); *Gilroy,* 199 N.W.2d at 68 ("Although defendant has at no time, either in trial court or here, challenged the two sentences imposed as the result of one homicide we are satisfied this is double punishment which cannot be allowed to stand."). At a minimum, the court's willingness to reach out for the issue on its own accord supports the notion that multiple sentences for a single homicide are illegal and not subject to the traditional requirements of error preservation. See *State v. Bruegger,* 773 N.W.2d 862, 871 (Iowa 2009) (expanding definition of "illegal sentence" to include "claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed").

But the appeals in *Gilroy* and *Wissing*—both following jury verdicts—do not address two important questions that must be answered in this appeal. First, what crimes may be called homicides? Second, may a defendant waive the protection from double punishment afforded by the one-homicide rule by entering guilty pleas to two homicide offenses on a factual record showing only one death? We will address each of these questions in turn.

**C. Does Child Endangerment Resulting in Death Qualify as a Homicide Offense?**

To decide if the one-homicide rule applies here, we must determine whether child endangerment resulting in death, in violation of Iowa Code section 726.6(4),[2] constitutes a "homicide offense" as the court used that term in *Wissing*.[3] Initially, we note the crime of child endangerment resulting in death does not appear in chapter 707, which is entitled "Homicide and Related Crimes." But no provision of the code defines the word "homicide" nor suggests that homicide offenses would be limited to chapter 707 crimes.

■ In legal parlance, a homicide is "[t]he killing of one person by another." Black's Law Dictionary 739 (7th ed.1999). An "offense" is another word for a crime. *Id.* at 1108. "Kill" means "to put to death." American Heritage Dictionary 701 (2nd ed.1985). It follows that a homicide offense would include any crime that involved one person putting another person to death. Because section 726.6 requires proof of a knowing, intentional, or willful act of endangerment that results in the death of a child (*see* Iowa Code § 726.6(1)(a)–(h)), we conclude it constitutes a homicide offense as contemplated by the *Wissing* court. Our conclusion is bolstered by the fact that the legislature deemed child endangerment resulting in death so grave an offense that it designated the crime as a class "B" felony and assigned a fifty-year prison term. *Cf. State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995) (considering length of sentences in deciding whether legislature intended multiple punishments).

**D. Did Fix's Guilty Pleas Waive the One–Homicide Rule?**

■ Having determined that child endangerment resulting in death is a homicide offense, we turn to the key question: Did Fix waive the protection of the one-homicide rule by voluntarily entering a plea agreement that provided for consecutive terms for child endangerment resulting in death and involuntary manslaughter?

The State stakes its waiver argument on *Birkestrand.* There, our supreme court considered a defendant's claim that he was "unconstitutionally subjected to double punishment." *Birkestrand*, 239 N.W.2d at 362. Looking at existing precedent, the court stated: "Unquestionably, protection against double jeopardy is a personal privilege which may be waived." *Id.* at 363. The court went on to say: "It would also appear double punishment is a like waivable privilege. *See Stockton v. State*, 508 P.2d 663, 665 (Okla.Crim.App.1973). *But see State v. Gilroy*, 199 N.W.2d 63, 68 (Iowa 1972); *State v. White*, 300 Minn. 99, 219 N.W.2d 89, 93 (1974)." *Id.* Because Birkestrand's two controlled substance offenses required proof of different elements, the court did not ultimately decide the case on waiver grounds. *Id.* at 364.

In the years following *Birkestrand*, the United States Supreme Court has provided guidance on the question whether a defendant's guilty plea waives a claim of double jeopardy. In *Menna v. New York*,

---

**2.** "A person who commits child endangerment resulting in the death of a child or minor is guilty of a class "B" felony. Notwithstanding section 902.9, subsection 2, a person convicted of a violation of this subsection shall be confined for no more than fifty years." Iowa Code § 726.6(4).

**3.** The State does not challenge the supposition that child endangerment resulting in death qualifies as a homicide offense for purposes of this appeal.

423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), the Court addressed a subsequent prosecution following a conviction for the same offense, holding: "Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." The *Menna* Court emphasized it was not holding "a double jeopardy claim may never be waived" but that "a plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute." *Id.* at 63 n. 2, 96 S.Ct. 241. In *United States v. Broce*, 488 U.S. 563, 576, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the Court held that a defendant's double jeopardy/multiple punishment challenge was foreclosed by his guilty pleas to two counts of conspiracy.[4] *Broce* distinguished *Menna* because that case could be resolved without expanding the record to prove the double jeopardy violation. *Id.* at 575, 109 S.Ct. 757 (noting that Broce pleaded guilty to indictments that on their face described separate conspiracies).

Federal circuit courts have read *Broce* as establishing the principle that a defendant who pleads guilty to a criminal charge may subsequently assert a claim of multiple punishment if the violation is apparent on the face of the indictment or plea record. *See United States v. Ehle*, 640 F.3d 689, 693 (6th Cir.2011); *United States v. Pollen*, 978 F.2d 78, 84 (3rd Cir.1992); *Taylor v. Whitley*, 933 F.2d 325, 328 (5th Cir.1991); *United States v. Kaiser*, 893 F.2d 1300, 1303 (11th Cir.1990). Likewise, some state courts have reconciled *Menna*

and *Broce* by concluding a counseled guilty plea does not bar a defendant from raising a double-jeopardy claim on appeal if that claim can be decided on the existing record. *See, e.g., Jordan v. State*, 676 N.E.2d 352, 354–55 (Ind.App.1997); *Negron*, 967 N.E.2d at 103; *State v. Jeffries*, 806 N.W.2d 56, 65 (Minn.2011).

But other state courts have rejected double punishment challenges where sentences have been "voluntarily accepted by the defendant as part of a mutually advantageous agreement with the state." *See, e.g., Novaton v. State*, 610 So.2d 726, 728 (Fla.App.1992); *see also People v. Hester*, 22 Cal.4th 290, 92 Cal.Rptr.2d 641, 644, 992 P.2d 569 (2000) (holding acceptance of plea bargain for specified sentence waived statutory right not to receive multiple punishments for a single act or indivisible course of conduct). It is this line of reasoning the State asks us to adopt.

We acknowledge the State's position has some allure. Fix willingly embraced the sixty-five year sentence in the plea agreement in return for not risking life imprisonment following a guilty verdict at trial. His challenge here "seeks to transform what was a favorable plea bargain in the district court to an even better deal on appeal." *Cf. State v. Walker*, 610 N.W.2d 524, 526 (Iowa 2000) (declining to merge willful injury into voluntary manslaughter because the plea record established more than one assault).

But, all things considered, this case is more akin to *State v. Mapp*, 585 N.W.2d 746 (Iowa 1998), than to *Walker*. Mapp pled guilty to conspiracy to commit murder and conspiracy to commit willful inju-

waiver under state law. *See, e.g., Commonwealth v. Negron*, 462 Mass. 102, 967 N.E.2d 99, 102 (2012); *State v. Kelty*, 294 Wis.2d 62, 716 N.W.2d 886, 894 (2006).

ry, receiving consecutive ten-year prison terms, in exchange for the State's dismissal of a first-degree murder charge. *Mapp,* 585 N.W.2d at 747. On appeal, Mapp claimed his sentences were illegal as cumulative punishment and should merge under section 701.9. *Id.* at 748. The supreme court agreed and reversed his conviction for conspiracy to commit willful injury and remanded for resentencing to eliminate the sentence for that offense. *Id.* at 749.

■ Our courts commonly reiterate that a guilty plea waives all defenses and objections not intrinsic to the plea. *See State v. Utter,* 803 N.W.2d 647, 651 (Iowa 2011). But "a guilty plea does not waive challenges that do not affect the validity of the *conviction.*" *State v. Mann,* 602 N.W.2d 785, 789 (Iowa 1999) (holding "waiver of constitutional challenges to a sentencing statute is not implicit in a defendant's guilty plea"); *see also Woody,* 613 N.W.2d at 218 (holding "[n]either party may rely on a plea agreement to uphold an illegal sentence" and vacating habitual offender sentence that was not supported by the record and not permitted by statute); *Mapp,* 585 N.W.2d at 749 (vacating bargained-for sentence). Neither party contends the problem lies with Fix's convictions. The one-homicide rule guards against multiple punishments for a single slaying.

■ As part of the negotiated plea bargain, the State and Fix agreed to consecutive sentences that violated the common law one-homicide rule. It is likely neither the prosecutor nor defense counsel realized the violation. But the inadvertence does not change the calculus. Our supreme court has not allowed double punishment for a single homicide to stand, even when the issue has not been raised by the parties. *Wissing,* 528 N.W.2d at 567; *Gilroy,* 199 N.W.2d at 68. We hold a violation of the one-homicide rule is an illegal sentence that under *Mann, Woody,* and *Mapp* cannot be waived even by a counseled, negotiated guilty plea.

■ Finally, we turn to the question of the remedy. Fix contends his judgment and sentence for involuntary manslaughter should be annulled and set aside, leaving the remainder of his plea agreement intact. The State counters that the entire plea agreement should be set aside, returning the parties to their respective positions before the guilty plea and leaving the county attorney the option of reinstating the original charges. Because the situation in *Mapp* presents a close analogy to this case, we adhere to the procedure followed there. We annul the judgment and sentence on Fix's conviction for involuntary manslaughter and remand for resentencing to eliminate the sentence for that offense. *See Jordan,* 676 N.E.2d at 355 (vacating the conviction for the lesser included offense and noting "[w]hile the State does not receive the full benefit of its bargain under this approach, we believe it to be the wisest in that it forecloses the possibility that Jordan will be set free" because the State would be less able to prosecute a stale case).

**REVERSED AND REMANDED FOR RESENTENCING.**