# IN THE COURT OF APPEALS OF IOWA

No. 17-0422
Filed March 21, 2018

**BRETT NOBLE,**
        Plaintiff-Appellant,

**vs.**

**IOWA DISTRICT COURT FOR MUSCATINE COUNTY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Muscatine County, Mark J. Smith (plea) and Mark D. Cleve (sentencing/motion), Judges.

        Defendant challenges his convictions and sentences for attempted murder and voluntary manslaughter. **WRIT SUSTAINED AND REMANDED.**

        Jack E. Dusthimer, Davenport, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Defendant Brett Noble filed this direct appeal from the denial of his second motion to correct an illegal sentence. There is no appeal as a matter of right from the denial of a motion to correct illegal sentence. *See State v. Propps*, 897 N.W.2d 91, 96 (Iowa 2017). The supreme court ordered Noble's notice of appeal be treated as a petition for writ of certiorari and, at its discretion, granted the petition. The supreme court transferred the case to this court for disposition on the merits. The question presented is whether it was legal for this defendant to be convicted of both attempted murder and voluntary manslaughter.

I.

In 2010, Noble was charged by trial information with murder in the first degree and theft in the first degree. The defendant entered into a plea agreement in which he pleaded guilty to four counts in an amended trial information: attempt to commit murder, theft in the first degree, voluntary manslaughter, and assault while participating in a felony. As part of the plea agreement, as set forth in a signed plea memorandum, the defendant stipulated "that the offense conduct supporting each count is separate." The defendant also "specifically waive[d] any claim he might have that the convictions or sentences under these counts would merge or that he could claim estoppel or any other claim premised on an alleged inconsistency between the elements of the counts." During the guilty plea colloquy, the defendant and defendant's counsel affirmed the "[d]efendant specifically waive[d] any claim he might have that the convictions or sentences under count—these counts would merge under the rules of sentencing or that he could claim estoppel or any other claim premised on alleged inconsistencies

between the elements of the counts." The district court accepted the defendant's plea to the amended trial information and imposed agreed-upon consecutive sentences for a total term of incarceration not to exceed fifty years.

In 2011, Noble filed a motion to correct illegal sentence. In his motion, he contended his sentence for attempted murder should be vacated on the ground the convictions for attempted murder and voluntary manslaughter arose out of the same act against the same person. Noble contended his convictions violated the constitutional protection against double jeopardy. The district court denied Noble's motion. The supreme court dismissed Noble's appeal as frivolous.

The motion at issue in this appeal is Noble's second motion to correct illegal sentence filed in February 2017. In his second motion, Noble contended his conviction for attempted murder was void and his sentence illegal because a "person cannot be convicted of both killing someone and attempt[ing] to" kill someone. In support of his motion, Noble relied on *State v. Ceretti*, 871 N.W.2d 88 (Iowa 2015), which was decided after Noble was convicted and sentenced and after the denial of Noble's first motion to correct illegal sentence.

In *Ceretti,* the defendant pleaded guilty to, among other things, attempted murder and voluntary manslaughter. *See Ceretti*, 871 N.W.2d at 89. Ceretti challenged his convictions and sentences on direct appeal, contending he could not be convicted of both offenses where the offense conduct supporting each conviction was the same. The supreme court agreed and held a "defendant may not be convicted of both an attempted homicide and a completed homicide when the convictions are based on the same acts directed against the same victim." *Id.* at 96. In reaching this conclusion, the court recognized the one-homicide rule

would not preclude both convictions because "attempted murder is not a homicide offense." *Id.* at 96. The court reasoned, however, "the principle underlying the one-homicide rule—that multiple punishments for homicide are not allowed when the defendant kills one person—applies equally when one of the offenses is attempted murder." *Id.* The court further reasoned that Iowa Rule of Criminal Procedure 2.22(3) thus precluded the convictions. The supreme court held the appropriate remedy was to vacate all "convictions and the entire plea bargain and remand the case to the district court." *Id.* at 97.

In this case, the district court was not persuaded by Noble's second motion. The district court denied Noble's motion on the grounds the issue had been previously litigated and Noble's claim was a challenge to the factual basis of his guilty plea rather than a challenge to his sentence.

## II.

The State defends the district court's denial of Noble's motion to correct illegal sentence on several grounds. First, the State contends *Ceretti* is inapplicable here because the defendant stipulated "that the offense conduct supporting each count is separate." Second, the defendant expressly waived any challenges regarding merger, estoppel, or inconsistency between the counts. Third, the State argues, the district court correctly held Noble's claims are barred res judicata.

## A.

We first address whether *Ceretti* is even applicable under the circumstances presented. *Ceretti* held a "defendant may not be convicted of both an attempted homicide and a completed homicide when the convictions are based on the same

acts directed against the same victim." *Ceretti*, 871 N.W.2d at 96. Here, Noble stipulated the offense conduct supporting his conviction for attempted murder and voluntary manslaughter was separate. When taken at face value, the stipulation makes *Ceretti* inapplicable here.

The difficulty presented is the stipulation is contrary to the remainder of the record. During the plea colloquy, the district court explained to Noble the State would have to prove the following with respect to attempted murder: the defendant kicked the victim in the head; in so doing, the defendant set in motion a force or chain of events that would cause or result in the death of the victim; and when the defendant kicked the victim the defendant specifically intended to cause the death of the victim. When Noble was asked whether it was his specific intent to cause the death of the victim, he stated, "Yes it was. I kicked her." With respect to manslaughter, the district court advised Noble the State would have to prove he "intentionally kicked the victim in this case; No. 2, that the victim died as a result of being kicked; and No. 3, that the kicking was done solely by reason of a sudden and violent and irresistible passion resulting from serious provocation." Noble stated he understood these elements. The minutes of testimony do not provide any support for finding separate offense conduct. The minutes contain a summary of a police interview with Noble. In the interview, Noble stated he and another woman went to the victim's house with the intent the woman would beat up the victim and then they would leave. According to the minutes, the victim pointed an unloaded shotgun at Noble, Noble took the shotgun and struck the victim in the face with it, the victim fell to the ground, and Noble kicked the victim in the face with steel-toed boots. Based on the plea colloquy and the minutes of testimony, it

is clear the offense conduct supporting the convictions for attempted murder and voluntary manslaughter is one and the same—the kick to the victim's face with steel-toed boots.

The defendant's stipulation that the offense conduct supporting each conviction is separate is of no legal consequence when the stipulation is contrary to the record. "The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection . . . . Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." *Young v. United States*, 315 U.S. 257, 259 (1942). It is thus well established courts are not bound by concessions or agreements relating to the administration of the criminal laws where the agreements are legally erroneous or factually untrue and would result in the maladministration of the criminal law. *See In re Clark's Estate*, 181 N.W.2d 138, 142 (Iowa 1970) ("Courts are bound to enforce stipulations which parties may validly make where they are not unreasonable or against good morals or sound public policy."); *State v. Howard*, No. 14-1549, 2016 WL 4051322, at *11 (Iowa Ct. App. July 27, 2016) (McDonald, J., dissenting) (collecting cases); *see also Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262–63 (5th Cir. 2010) (stating the court "has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice . . . or where there is substantial evidence contrary to the stipulation"); *Darwish v. Tempglass Group, Inc.*, 26 Fed. Appx. 477, 480 (6th Cir. 2002) (stating the parties cannot stipulate to untrue facts); *Mech-Con Corp. v. West*, 61 F.3d 883, 887 (Fed. Cir. 1995) ("We may disregard a stipulation

when it is inadvertent, contrary to law, contrary to fact, or made without proper authority."); *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) ("Of course, the parties may not create a case by stipulating to facts which do not really exist.  A district court is entitled to disregard a stipulation if to accept it would be manifestly unjust or if the evidence contrary to the stipulation [is] substantial."); *United States v. Kulp*, 365 F.Supp. 747, 763 (E.D. Pa. 1973) ("Where a court has felt it necessary to prevent an injustice, particularly where facts contrary to the stipulation are established by evidence, then the court may relieve a party from a stipulation."); *In re Harrington*, 578 B.R. 147, 153 (Bankr. N.D.N.Y. 2017) ("However, there are three exceptions to the general rule: (i) parties cannot stipulate to facts that do not exist, (ii) a court is not bound by a stipulation that is manifestly unjust, or there is substantial evidence contrary to the stipulation and (iii) a court is not required to accept a stipulation regarding a question of law."); *In re Commitment of Walker*, 19 N.E.3d 205, 223 (Ill. App. Ct. 2014) ("From the foregoing, we discern that a party may be relieved from a stipulation where it is clearly shown that the stipulation is untrue, violative of public policy, unreasonable, or procured by fraud.").

We thus conclude the defendant pleaded guilty to committing the crimes of attempted murder and voluntary manslaughter based on the same act against the same victim; specifically, kicking the victim in the head with steel-toed boots.  The defendant's convictions and sentences are in violation *Ceretti*, and the defendant is entitled to relief unless he has waived the issue or is precluded from raising the issue.

B.

The State contends the defendant "specifically waive[d] any claim he might have that the convictions or sentences under these counts would merge or that he could claim estoppel or any other claim premised on an alleged inconsistency between the elements of the counts." We disagree Noble waived the challenge presented here. There are three points relevant to our conclusion.

First, the mere fact the defendant pleaded guilty to these offenses and agreed to the sentences is insufficient to establish waiver. This issue was raised in *Ceretti*. In that case, "the State urge[d] that Ceretti waived the right to appeal the sentences imposed by pleading guilty and agreeing to the State's sentencing recommendations." *Ceretti*, 871 N.W.2d at 91. Although the supreme court identified the waiver argument, it did not expressly address or resolve it. However, the supreme court implicitly rejected the argument because the court reached the substantive issue presented, vacated Ceretti's convictions and plea bargain, and remanded the matter for further proceedings. *See id.* at 97.

Second, it is not clear the express terms of the waiver encompass the specific legal challenge presented in this case. In the plea agreement, the defendant expressly waived any claim regarding merger. In *Ceretti*, the defendant contended his convictions "violated the merger statute." *Id.* at 92. The court explained the merger statute codified "the double jeopardy protection against cumulative punishment." *Id.* The court applied the *Blockburger* legal-elements test to determine whether merger was appropriate, *see id.* at 92 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)), and concluded merger was not required here. *See id.* at 95 (stating "the *Blockburger* test does not require merger under the circumstances presented"). Noble's claim is thus not a merger claim.

*See, e.g., State v. Fix*, 830 N.W.2d 744, 748 (Iowa Ct. App. 2013) (stating the one-homicide rule "is not technically rooted in either the constitutional double jeopardy clauses or the merger statute"). Similarly, Noble waived any claim related to estoppel or inconsistency between the elements, but *Ceretti* does not appear to encompass either of these claims. Instead, as a matter of doctrine, *Ceretti* appears to be a stand-alone substantive rule of law, analogous to but distinct from the one-homicide rule, that prohibits convictions for "an attempted homicide and a completed homicide when the convictions are based on the same acts directed against the same victim." *Ceretti,* 871 N.W.2d at 96. *See Fix*, 830 N.W.2d at 748 (concluding "Iowa's one-homicide rule is a creature of common law").

Third, even if the *Ceretti* claim fell squarely within the terms of the express waiver, the express waiver would be of no legal effect. It is well established the parties cannot agree upon an illegal sentence. *See State v. Copenhaver*, 844 N.W.2d 442, 447 (Iowa 2014) ("An illegal sentence is a sentence that is not permitted by statute."); *State v. Woody*, 613 N.W.2d 215, 218 (Iowa 2000) ("Neither party may rely on a plea agreement to uphold an illegal sentence."). "A claim that a sentence is illegal goes to the underlying power of the court to impose a sentence." *Veal v. State*, 779 N.W.2d 63, 65 (Iowa 2010). *See State v. Barber*, 248 P.3d 494, 502 (Wash. 2011) ("Moreover, the inability of the parties' agreement to alter the court's sentencing authority comports with the general notion that the court is not bound by a party's erroneous concession on a matter of law."). *Ceretti* concludes the district court is without authority to impose multiple convictions or punishments for an attempted homicide and a completed homicide where the convictions are based on the same acts directed against the same victim. *See*

*Ceretti*, 871 N.W.2d at 89 (stating "voluntary manslaughter and attempted murder convictions are mutually exclusive"); *id.* at 95 (stating "rule 2.22(3) prevents the State from punishing Ceretti for both attempting and complete the same homicide"); *id.* at 96 (referring to the prohibition against "multiple punishments"). The doctrinal foundation of the rule was an extension of the one-homicide rule to an attempted homicide. *See id.* at 96 (stating "the principle underlying the one-homicide rule . . . applies equally when one of the offenses is attempted murder"). In *State v. Fix*, this court concluded a violation of the one homicide rule constituted an illegal sentence that cannot be waived:

> Our courts commonly reiterate that a guilty plea waives all defenses and objections not intrinsic to the plea. *See State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011). But "a guilty plea does not waive challenges that do not affect the validity of the *conviction*." *State v. Mann*, 602 N.W.2d 785, 789 (Iowa 1999) (holding "waiver of constitutional challenges to a sentencing statute is not implicit in a defendant's guilty plea"); *see also Woody*, 613 N.W.2d at 218 (holding "[n]either party may rely on a plea agreement to uphold an illegal sentence" and vacating habitual offender sentence that was not supported by the record and not permitted by statute); [*State v.*] *Mapp*, 585 N.W.2d 746, 749 (Iowa 1998) (vacating bargained-for sentence). Neither party contends the problem lies with Fix's convictions. The one-homicide rule guards against multiple punishments for a single slaying.
>
> As part of the negotiated plea bargain, the State and Fix agreed to consecutive sentences that violated the common law one-homicide rule. It is likely neither the prosecutor nor defense counsel realized the violation. But the inadvertence does not change the calculus. Our supreme court has not allowed double punishment for a single homicide to stand, even when the issue has not been raised by the parties. We hold a violation of the one-homicide rule is an illegal sentence that under *Mann*, *Woody*, and *Mapp* cannot be waived even by a counseled, negotiated guilty plea.

830 N.W.2d at 751.

For the same reasons set forth in *Fix*, we conclude the violation of the *Ceretti* rule constitutes an illegal sentence that cannot be waived.

C.

The State contends Noble's claim was resolved in his first motion to correct illegal sentence and his current claim is barred res judicata. "The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006). Res judicata prevents a party from relitigating a claim or issue that has already been determined by a final judgment. *See George v. D.W. Zinser Co.*, 762 N.W.2d 865, 868 (Iowa 2009). "The doctrine serves a dual purpose: to protect litigants from the vexation of relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation, and to further the interest of judicial economy and efficiency by preventing unnecessary litigation." *Emp'rs Mut. Cas. Co v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012) (internal quotations omitted).

Whether the State's argument is considered one of claim preclusion or issue preclusion, we conclude Noble's claim is not barred. First, the claims and issues are not identical. Noble's first motion raised a double jeopardy challenge to his convictions based on principles of merger. As noted above, *Ceretti* is a substantive rule of criminal law analogous to the common law one-homicide rule. The *Ceretti* rule is not a double jeopardy claim based on principles of merger. The issues in the first and second motion are thus not identical. *See Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 451 (Iowa 2016) (stating issues must be identical for issue preclusion to apply). Second, and related, *Ceretti* is a new rule of substantive law that could not have been litigated in the prior proceeding. *See Soults Farms, Inc.*

*v. Schafer*, 797 N.W.2d 92, 107 (Iowa 2011) (explaining "the Restatement (Second) of Judgments § 28 provides the following exceptions to the application of issue preclusion: . . . (2) intervening change in the applicable law"). Because *Ceretti* announced a new common law rule made after Noble's first motion to correct illegal sentence, the prior motion did not raise the claim, and the district court did not rule on the claim.

We thus conclude Noble's claim is not barred res judicata.

## D.

In sum, we conclude the offense conduct supporting Noble's conviction for attempted murder and voluntary manslaughter is not separate. The plea record establishes each conviction is predicated on the same act against the same victim. Noble did not and could not waive his challenge to these convictions and sentences. The mere fact that he pleaded guilty is insufficient to constitute waiver of his *Ceretti* challenge. The express terms of the waiver do not encompass the substantive challenge presented in this appeal. And the convictions and sentences here constitute an illegal sentence beyond the district court's authority to impose even when bargained for. Finally, the claims presented in Noble's second motion to correct illegal sentence are not barred res judicata. The district court erred in denying Noble's motion to correct illegal sentence.

## III.

Having concluded Noble's convictions and sentences are in violation of *Ceretti* and were not waived or otherwise barred, we must address the question of remedy.

It seems to us there are two potential remedies. *See Woody*, 613 N.W.2d at 218 ("If neither party may rely on the plea agreement, what remedy is appropriate here? Do we allow the State to reinstate the original charge or do we remand for sentencing on the reduced charge?"). One remedy is to vacate the defendant's conviction and sentence for voluntary manslaughter, enforce the remainder of the plea bargain, and remand for resentencing on the remaining convictions. This is the remedy adopted in *Fix*. *See Fix*, 830 N.W.2d at 751 ("We annul the judgment and sentence on Fix's conviction for involuntary manslaughter and remand for resentencing to eliminate the sentence for that offense."). By simply severing the sentence, however, we may create a perverse incentive for defendants "to enter plea agreements quietly—even if they have double punishment concerns—and then appeal them to obtain a more lenient sentence." *Ceretti*, 871 N.W.2d at 97. This would allow the defendant "to transform what was a favorable plea bargain in the district court to an even better deal on appeal." *Id.* A second remedy is to vacate all of the "convictions and the entire plea bargain and remand the case to the district court." *Id.* In *Ceretti*, the supreme court concluded the second remedy was consistent with principles of bargaining and more fair to the State.

We conclude the best disposition of the claim is to allow the prosecutor to elect one of these two remedies. While annulling the judgment and sentence for voluntary manslaughter and enforcing the remainder of the plea bargain might allow the defendant to turn a favorable plea into a better deal, in some circumstances the State may consider that a preferable remedy to vacating the plea bargain and all of the convictions and beginning anew. The passage of time

inevitably works to the detriment of the prosecution—evidence is lost or degrades; witnesses move or pass away; of those witnesses who remain, memories fade. *See Estate of Kuhns v. Marco*, 620 N.W.2d 488, 491 (Iowa 2000) (discussing these concerns in the context of stale claims). The prosecution must also consider whether the potential incremental increase in punishment available by beginning anew is worth the emotional toll imposed on the victim (obviously inapplicable here), the victim's family, witnesses, and the community at large upon being forced to reopen a matter thought to be concluded. These are legitimate concerns left best left to the prosecutor's discretion.

IV.

We hold the defendant's convictions for attempted murder and voluntary manslaughter are predicated on the same act directed against the same victim and violate the rule announced in *Ceretti*. We remand this matter for further proceedings. At the State's election, the district court shall either: (1) vacate the defendant's conviction and sentence for voluntary manslaughter and resentence the defendant on the remaining convictions; or (2) vacate the plea bargain and the resulting convictions. In the event the State elects the latter remedy, "the State may reinstate any charges dismissed in contemplation of a valid plea bargain, if it so desires, and file any additional charges supported by the available evidence." *Ceretti*, 871 N.W.2d at 97.

**WRIT SUSTAINED AND REMANDED.**