STATE of Iowa, Appellee,

v.

James Grant THOMPSON, Appellant.

No. 66827.

Supreme Court of Iowa.

Nov. 24, 1982.

Lylea M. Dodson and George W. Bergeson, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and Dan Johnston, Polk County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

HARRIS, Justice.

Defendant was charged with first degree murder, Iowa Code §§ 707.1 and 707.2 (1979), in the shooting death of Roger Jones. He appeals his conviction of the included offense of voluntary manslaugh-

ter, Iowa Code § 707.4 (1979), assigning three errors. We find them to be without merit and affirm the trial court.

The night before the shooting, defendant and his girlfriend, Patricia Thyberg, were preparing to go out together. They planned to leave Des Moines the following day for a new drug-free life in Florida. Prior to leaving, defendant insisted he heard prowlers outside. He was seen running frantically around the house peering out the windows, wielding a gun. During the course of the evening defendant ingested between five and seven grams of cocaine intravenously. As a result he suffered intense muscle tremors which severely limited his ability to function. He was not even able to perform such simple tasks as dialing a telephone.

When defendant and Thyberg returned home about 2:00 a.m. Roger Jones, the victim, and his girlfriend, Brenda Rousch, were watching television. The victim was the roommate of defendant and for many years had been his best friend. Defendant and Jones argued about an earlier incident when a number of people had entered the house, pointed shotguns at Jones's face, and issued threats against both defendant and Jones. It seems the earlier incident was based on Jones's failure to pay all of his drug debts. Jones and defendant, who were described as being as close to one another as brothers, "exchanged some words" over Jones's additional indebtedness to the defendant for drugs. It was a heated argument during which crude insults were hurled.

At some point during the argument defendant fired a shot into the baseboard of the house. It seems not to have been aimed at anyone and, apparently, Jones was not alarmed. Other comments and the events of the evening are unclear; the four had all ingested various combinations of drugs that night.

The next day the victim's girlfriend took his car and went to work. Around noon defendant and his girlfriend finished packing and prepared to leave for Florida. The girlfriend made a phone call while defend-

ant and the victim were talking in another room. According to defendant he repeated his reasons for leaving Des Moines. Jones, in turn, expressed concern about his future safety, especially in view of the experience, previously described, which resulted from the drug debt.

Defendant was also concerned about Jones's safety and offered to leave him his gun. What happened next is disputed. Defendant says he picked up the gun to hand it to Jones, who was then sitting on the floor. At some point the gun discharged. Jones was struck in the head and died instantly. The defendant dropped the gun and went over to Jones's body. Thyberg heard the shot and rushed into the room to find defendant crying and shaking.

Defendant and Thyberg then left the house. Thyberg testified defendant threw the gun into the Des Moines river. Later that afternoon the two drove to Ayrshire, Iowa, the home of defendant's parents. They returned to Des Moines later that night after hearing that Jones's body had been discovered.

Defendant and Thyberg were questioned by the police. They at first denied even being in the house. When questioned again several days later, however, they told police what they recalled. Defendant also took the police to the place near the river where he had thrown the gun. The gun was retrieved, after five days, from the river. It was dried off and placed in a bucket of oil.

Before trial, in an effort to aid his recollection, defendant consulted a clinical psychologist, Dr. John C. Garfield. In this attempt defendant underwent hypnotic treatment. Dr. Garfield testified as an expert witness for defendant, explaining that defendant's cocaine abuse had resulted in his paranoid behavior and physical tremors. He said common psychological reactions caused defendant's inability to recall the details of Jones's death.

Other details can more appropriately be described as they relate to the various assignments.

I. Our scope of review is on error. Iowa R.App.P. 4. In testing the sufficiency of evidence we view the evidence in the light most favorable to the State and the State has the benefit of all reasonable inferences which arise from the evidence. *State v. Poyner,* 306 N.W.2d 716, 718 (Iowa 1981). Some matters are left to the discretion of the trial court and are not wholly reviewable on appeal; we only consider whether that discretion has been abused. Abuse will be found only where the discretion "was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982). Many rulings on admission of evidence lie within the sound discretion of the trial court under this standard. *State v. DeBerg,* 288 N.W.2d 348, 351 (Iowa 1980). A jury verdict is binding on us if there is substantial evidence to support it. Substantial evidence means evidence which could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *State v. Mulder,* 313 N.W.2d 885, 888 (Iowa 1981).

II. The gun was introduced and received into evidence without objection. Defendant did object, however, when the jury was allowed to take the gun to the jury room for deliberations. He argues that the weapon was not in the same working condition at the time of trial as it had been at the time of the incident. Because it had been in the river, it is claimed, it was allowed to rust and it is uncertain that the firing mechanism would be as responsive at the time of trial as it had been at the time of the shooting. Because of the altered condition of the gun defendant claims, under *State v. Shea,* 218 N.W.2d 610, 615 (Iowa 1974), it was an abuse of the trial court's discretion to allow the gun to be taken by the jury during deliberations.

Iowa R.Crim.P. 18(7)(e) provides in part: "Upon retiring for deliberations the jury *may* take with it all papers and exhibits which have been received in evidence, and the court's instructions." (Emphasis added.) The rule is much the same in civil cases. Iowa R.Civ.P. 198. We recently said that rule 18(7)(e) leaves it to the trial court, in its discretion, to determine whether exhibits are to be taken by the jury during deliberations. *State v. Beeman,* 315 N.W.2d 770, 772 n. 2 (Iowa 1982). In *Shea* we approved the ABA standards relating to trial by jury (approved draft 1968), § 5.1:

(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room ... exhibits ... which have been received in evidence, ....

(b) Among the considerations which are appropriate in the exercise of this discretion are:

(i) whether the material will aid the jury in a proper consideration of the case;

(ii) whether any party will be unduly prejudiced by submission of the material; and

(iii) whether the material may be subjected to improper use by the jury.

218 N.W.2d at 615.

Although we agreed in *Shea* that the jury should not have been allowed to take the challenged exhibits with them during deliberations there was no harm done. Shea was not prejudiced. *Id.* at 615–16. Neither was defendant here harmed. Assuming, without holding, the gun here should not have been sent with the jury, Thompson is in no position to complain.

During the cross-examination of the defendant the State demonstrated to the jury how the firing mechanism worked. The demonstration took place without objection. Any similar experiments with the gun by the jury were only cumulative of what was already in the record without objection. *See State v. Jurgenson,* 225 N.W.2d 310, 312 (Iowa 1975) (error in admitting evidence is not prejudicial when substantially the same evidence is already in the record without objection); McCormick, *Handbook of the Law of Evidence,* § 217 at 541–42 (2nd ed.1972). We find no abuse in the trial court ruling.

III. As mentioned, in an effort to aid defendant's ability to recall the shooting, defendant was hypnotized prior to trial by a

clinical psychologist. The session was tape recorded and the tapes were offered by defendant during the direct examination of Dr. Garfield, the psychologist. The trial court excluded the actual tapes of the session, although Dr. Garfield's testimony was not limited. Defendant contends that the exclusion of the tapes constituted an abuse of discretion.

Dr. Garfield testified that his opinion was based on facts he gathered from six interviews with defendant, police reports and statements, and two interviews with Patricia Thyberg, defendant's girlfriend. At trial virtually all the facts used by Dr. Garfield to formulate his opinion were made a part of the record; the police, Thyberg, and Garfield all testified. The only exceptions were the things Dr. Garfield learned at the hypnotic session. Dr. Garfield was even allowed to read from a transcript of a recording made during a prehypnotic session with defendant.

Defense counsel never questioned Dr. Garfield about defendant's statements under hypnosis. We have no way of knowing under this record what is in the tapes that would have helped defendant. Neither was the trial court told. Under this record we find no abuse of discretion.

IV. Defendant argues there was insufficient evidence presented at trial to support a jury finding that he was guilty of voluntary manslaughter as defined in Iowa Code § 707.4. The defendant made a motion for directed verdict of acquittal at the close of the State's evidence, and renewed it at the close of all evidence. But he did not object to the voluntary manslaughter instruction or to the verdict form by which it was submitted as an included offense.

Defendant maintains he is not challenging the jury instructions, only the sufficiency of the evidence to support his conviction. He believes his motions for directed verdict preserved his challenge. He cites cases in which he says we entertained a challenge to the sufficiency of the evidence even though the subject instructions had been unchallenged. *State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981); *State v. Beyer,* 258 N.W.2d 353, 356–57 (Iowa 1977).

These cases do not support defendant's position. They stand only for the proposition that, where a trial court is adequately alerted to a sufficiency challenge, the challenge is not lost by a failure to object to instructions. Here the trial court was never alerted to the sufficiency challenge defendant urges on appeal.

Defendant was on trial for first degree murder. We have no way of knowing from the record whether, under his trial plan, he wanted voluntary manslaughter submitted as an included offense. In some cases the defense wishes for the submission of the lesser included offense. In some cases the defense plan calls for an "all or nothing" tactic.

At the close of the State's evidence the motion for a directed verdict was made "on the grounds that the State has wholly failed to prove a prima facie case that the specific charge in this matter is murder in the first degree; that among the essential elements of this crime is deliberation, premeditation, and a specific intent to kill; that the State has ... failed to show those elements." The motion was overruled and at the close of all evidence was renewed. At no time was the trial court ever specifically told that there was insufficient evidence to submit the lesser included offense of voluntary manslaughter.

Although it might well be expected that, as a lesser included offense, voluntary manslaughter was considered an appendage of the major crime charged, defendant should not be allowed to gamble on the verdict and then complain. Under these circumstances he should have specifically addressed the sufficiency challenge to the lesser included offense or objected to the instruction and verdict form on voluntary manslaughter. *See State v. Rosewall,* 239 N.W.2d 171, 175 (Iowa 1976). Error was not preserved.

AFFIRMED.