**STATE of Iowa, Appellee,**

v.

**Hani Wadih KHOURI, Appellant.**

**No. 92–368.**

Supreme Court of Iowa.

July 21, 1993.

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., and Denver D. Dillard, County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

Defendant Hani Wadih Khouri appeals from his conviction, following a jury trial, of murder in the first degree. He argues (1) the trial court erred in failing to instruct the jury on the theory of defense of extreme emotional disturbance, (2) the State failed to meet its burden of proof, (3) the court abused its discretion in failing to grant a mistrial, and (4) he was denied effective assistance of counsel.

In accordance with the routine practice, we reserve Khouri's claim of ineffective assistance of counsel for postconviction proceeding. Because we find no merit in the other three assignments, we affirm.

---

Hani W. Khouri is a fifty-seven-year-old native of Damascus, Syria, who has lived in Iowa since 1972. Since 1975 he has owned and operated a restaurant in Cedar Rapids. In the early 1970s, Khouri began a long-term romantic relationship with Jacqueline Chacey. Sometime in 1990, however, the relationship deteriorated and Chacey started seeing another man, described as being from Illinois.

Chacey died of five gunshot wounds fired from a close range. At the time she and Khouri were in a parked car in plain view of a police officer and a number of television station employees across the street. These witnesses described seeing and hearing the gun fired at the time by Khouri into Chacey's body.

There was considerable evidence that Khouri was under great stress. His economic situation had deteriorated. He eventually could not get his lease renewed on the building for his business and thereafter lost it. He went into bankruptcy and was threatened with eviction from his apartment. The stress also stemmed from Khouri's resentment of Chacey's other romantic interest in the man from Illinois.

Khouri was charged, tried before a jury, and convicted of first-degree murder.

I. Khouri's first assignment challenges the trial court's refusal of his requested jury instruction on "extreme emotional disturbance" as a mitigating circumstance in reducing murder to manslaughter. The trial court held that extreme emotional disturbance is not a defense recognized in Iowa and rejected the instruction. Without suggesting we must do so, we pass our serious reservations concerning error preservation and elect to address the merits of the challenge.

Khouri explains his defensive theory this way:

This defense was originally formulated in the model penal code. Since the publication of the model penal code, many jurisdictions have adopted the defense statutorily. *See* P. Robinson, *Criminal Defenses* §§ 102(a)–(d) (1984). Extreme emotional disturbance has been defined as follows:

That extreme emotional disturbance is the emotional state of an individual who: ... (b) is exposed to an extremely unusual and overwhelming stress; and (c) has an extreme emotional reaction to it, as a result of which there is a loss of self-control and reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions.

*State v. Ott*, [297 Or. 375] 686 P.2d 1001, 1012 (Or.1984). In such a circumstance, defendant is not relieved of culpability unless there is a reasonable explanation or excuse for the extreme emotional distress. *Ott*, 686 P.2d at 1012; Model Penal Code § 210.3(1)(b). "The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances he believes them to be." Model Penal Code 210.3(1)(b); *see* P. Robinson, *Criminal Defenses* § 102(c) (1984). Also, the burden is on the defendant to prove by a preponderance of the evidence that the defense applies. *Patterson v. New York*, 432 U.S. 197, 207–10, 87 [97] S.Ct. 2319, [2325–27], 53 L.Ed.2d 281, 290–92 (1977). It is apparent from the above statement of the law that extreme emotional distress negates the elements of premeditation, willfulness and the specific intent to kill. As such, it is a proper defense of diminished capacity.

We agree with the trial court that the proposed theory is not a part of our law. Khouri views it as "amounting to nothing more than diminished capacity." This view is one to which we do not subscribe; the doctrine Khouri suggests seems to us to differ substantially from the doctrine of diminished capacity. And, to any extent it differs, we reject it because we believe the diminished capacity theory, as fully explained in the uniform instruction, strikes the correct balance between the interests of the accused and the public. We recognize the doctrine of diminished capacity as a matter of common law for a limited purpose. *See State v. Collins*, 305 N.W.2d

434, 436 (Iowa 1981). We are unwilling, in the absence of legislative fiat, to expand the doctrine. If extreme emotional disturbance is to become a part of our law, it should be by act of the legislature.

The trial court correctly held that extreme emotional disturbance is not a theory of defense recognized under Iowa law. The assignment is without merit.

■ II. Khouri claims there was insufficient evidence to prove premeditation and a specific intent to kill. We have said that

> [d]eliberation and premeditation may be shown by circumstantial evidence in one of three ways: (1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from prior relationships between defendant and the victim; and (3) evidence regarding the nature of the killing.

*State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984). Both premeditation and intent to kill may be inferred from defendant's use of a deadly weapon with the opportunity to deliberate. *Waterbury v. State*, 387 N.W.2d 309, 311–12 (Iowa 1986). He certainly used a deadly weapon. Opportunity to deliberate was demonstrated by evidence he had Chacey's apartment watched. Indeed, defendant himself spent considerable time parked outside the apartment. Evidence produced by the State showed Khouri was distraught and even threatened to kill himself.

Khouri's challenge to the sufficiency of evidence is without merit.

■ III. We find no abuse of discretion in the trial court's refusal to grant a mistrial. Khouri believes that remarks by the prosecutor during final argument were improper and demanded a mistrial. The remarks were a response to defense counsel's argument that the victim may have been intoxicated, a matter that, if true, might lend credibility to Khouri's claim that Chacey was the first aggressor and provoked the killing.

The prosecutor responded vigorously, strongly disputing defense counsel's calcu-

lations of blood alcohol levels, and labeled the defense suggestion a "red herring." The trial court ruling fit well within its range of discretion.

**AFFIRMED.**