**STATE of Iowa, Appellee,**

v.

**Michael William COUSER, Appellant.**

No. 95–1942.

Supreme Court of Iowa.

July 23, 1997.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol and David Arthur Adams, Assistant Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, Denver D. Dillard, County Attorney, and Harold Denton, Assistant County Attorney, for appellee.

CARTER, Justice.

Defendant, Michael William Couser, who was tried for first-degree murder and convicted of voluntary manslaughter, appeals from the judgment of conviction. He contends that the State's evidence was legally insufficient to justify the submission of voluntary manslaughter as a lesser included offense because of an absence of proof that his killing of the victim was the result of serious provocation. Because at time of trial he acquiesced in the submission of voluntary manslaughter as an issue to be considered by the jury, he has not preserved error on this contention. Consequently, we are forced to consider his alternative claim that his trial counsel was ineffective for failing to object to the submission of that lesser included offense. Defendant also contends that the district court erred in refusing to instruct the jury that, if the killing was undertaken in furtherance of a joint suicide pact between defendant and the victim, he would not be guilty of a criminal act. After considering the arguments presented, we reject all of these contentions and affirm the judgment of the district court.

Defendant was charged with first-degree murder in the death of his girlfriend, Alicia Hawkins. Alicia, twenty-one, and defendant, twenty-seven, were living together in a Marion, Iowa, motel. Police who responded to a 911 emergency call from defendant went to the motel and discovered Alicia's dead body. Her jugular vein had been severed with a utility knife. The left transverse cervical vein in defendant's neck had also been cut, and he had lost a substantial amount of blood. The fatal injury to Alicia and the injury to defendant had occurred approximately twenty-four hours before defendant made the 911 call.

It has been defendant's contention throughout the course of this criminal prosecution that he and Alicia, being despondent over the course of their lives, entered into a joint suicide pact, pursuant to which each

was to sever the other's jugular vein. Two knives had been purchased to accomplish this result. According to defendant, although he succeeded in severing Alicia's jugular vein, she botched her attempt to sever his and succeeded only in cutting another major neck vein.

## I. *Whether Defendant's Trial Counsel Was Ineffective for Failure to Object to the Submission of Voluntary Manslaughter as a Lesser Included Offense.*

■ Defendant's first contention is that the State's evidence was insufficient to warrant submission of voluntary manslaughter as a lesser included offense because of an absence of proof that his killing of Alicia was the result of serious provocation. At trial defendant made no objection to the court's submission of the lesser offense of which he was ultimately found guilty. This omission on his part results in an absence of error preservation with respect to the argument he now makes.

A very similar situation was presented to this court in *State v. Thompson*, 326 N.W.2d 335 (Iowa 1982). The defendant in *Thompson*, like the defendant in the present case, was tried for first-degree murder and convicted of voluntary manslaughter. Like this defendant, the defendant in *Thompson* sought to challenge on appeal the sufficiency of the evidence to sustain the voluntary manslaughter conviction. Like this defendant, he had not alerted the district court to the fact that he had any objection to the submission of that lesser included offense for the jury's consideration. In finding that defendant had waived his right to challenge the sufficiency of the lesser offense, we stated:

> Although it might well be expected that, as a lesser included offense, voluntary manslaughter was considered an appendage of the major crime charged, defendant should not be allowed to gamble on the verdict and then complain. Under these circumstances, he should have specifically addressed the sufficiency challenge to the lesser included offense or objected to the instruction and verdict form on voluntary manslaughter.

*Thompson*, 326 N.W.2d at 338. The failure to object to the submission of lesser included offenses was also considered in *State v. Taggart*, 430 N.W.2d 423 (Iowa 1988), in which we stated:

> Failure to timely object to an instruction [submitting a lesser included offense] not only waives the right to assert error on appeal, ... but also "the instruction right or wrong, becomes the law of the case."

*Taggart*, 430 N.W.2d at 425 (quoting *Froman v. Perrin*, 213 N.W.2d 684, 689 (Iowa 1973)). Defendant's failure to object to the submission of the lesser included offense of which he was convicted results in both an absence of error preservation and the application of law of the case consequences.

■ As an alternative ground for challenging his conviction of voluntary manslaughter defendant contends that his trial counsel was ineffective for failure to object to the submission of that charge to the jury, thus violating his rights under the Sixth Amendment to the Constitution of the United States. There is no basis in the record for sustaining this contention. In *State v. Miles*, 344 N.W.2d 231, 233 (Iowa 1984), we reaffirmed that a party will not be found to have been denied a fair trial due to inadequacy of counsel unless it is shown that (1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom. *See also Henderson v. Scurr*, 313 N.W.2d 522, 524 (Iowa 1981); *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981).

■ In *State v. Blackford*, 335 N.W.2d 173, 178 (Iowa 1983), we recognized that counsel's trial performance must be judged by his primary theory of defense. Lawyers may differ on how to defend a murder case, particularly after a guilty verdict is in. Consequently, we do not indulge in nice distinctions concerning tactics when they do not clearly appear to have been misguided. *State v. Mulder*, 313 N.W.2d 885, 891 (Iowa 1981). The tactical nature of the present claim is well illustrated by our comments in *Thompson*, which, we have previously noted, also involved a contention concerning the submission of voluntary manslaughter as a lesser included offense. We there stated:

Defendant was on trial for first-degree murder. We have no way of knowing from the record whether, under his trial plan, he wanted voluntary manslaughter submitted as an included offense. In some cases, the defense wishes for the submission of the lesser included offense. In some cases, the defense plan calls for an "all or nothing" tactic.

*Thompson,* 326 N.W.2d at 338. Within the context in which this dilemma was submitted to defendant's trial counsel in the present case, we are not willing to fault his decision to provide the jury with an additional alternative to first-degree murder. It was undisputed that his client had used a deadly weapon to intentionally cut Alicia Hawkins' throat with the goal of ending her life. Just as we are unable to conclude that counsel's tactical decision was not fully justified, we are similarly unable to conclude, even with the benefit of hindsight, that the result of including that offense was prejudicial to the defendant. It may well have been the vehicle that prompted the jury not to convict defendant of first-degree murder. For all of the reasons stated, we find no basis in overturning defendant's conviction based on the submission of voluntary manslaughter as a lesser included offense.

## II. *Requested Instructions on Joint Suicide Pact Defense.*

■ Defendant requested that the trial court instruct the jury that if his killing of Alicia was undertaken in the furtherance of a joint suicide pact that he had entered into with her then he should not be found guilty of the offense charged or any lesser offense included therein. Defendant actually requested three instructions on this claim. These were as follows:

### Defendant's Proposed Instruction No. 1.

The taking of one's own life, that is, suicide, is not an unlawful act or criminal offense.

### Defendant's Proposed Instruction No. 2.

The defendant contends that he and Alicia Hawkins entered into a joint suicide pact. If you find that the defendant and Alicia Hawkins entered into a joint suicide pact and that Alicia Hawkins' death occurred as a result of the joint suicide pact you should find the defendant not guilty.

### Defendant's Proposed Instruction No. 3.

You are to determine whether a joint suicide pact existed between the defendant and Alicia Hawkins at the time of her death. A joint suicide pact is defined as two people who intend to terminate their lives at the same time.

There are many factors which you may consider in deciding whether a joint suicide pact existed, for example:

1. Whether it was entered into freely and voluntarily by both parties and not induced by force, duress or deception.
2. Whether both parties genuinely intended to terminate their lives.
3. Whether the method chosen by the parties to carry out their act involved the same potential risks and consequences to each.
4. Whether the act was initiated by both parties simultaneously.

The trial court refused to submit any of these requested instructions. We have recognized that, unless proposed instructions reflect accepted principles of law material to the decision in the case on trial, a trial court does not commit error in rejecting a requested instruction. *State v. Khouri,* 503 N.W.2d 393, 394–95 (Iowa 1993).

A substantial number of cases from other jurisdictions hold that one who actually performs or actively assists in performing an overt act resulting in the death of another person is guilty of homicide, irrespective of the victim's desire to die. *E.g., People v. Matlock,* 51 Cal.2d 682, 336 P.2d 505, 511 (1959) (defendant strangled victim at victim's request); *People v. Cleaves,* 229 Cal.App.3d 367, 280 Cal.Rptr. 146, 150–51 (1991) (defendant held victim on bed to ensure self-strangulation continued); *Gentry v. State,* 625 N.E.2d 1268, 1273 (Ind.App.1993) (defendant suffocated victim after victim's unsuccessful suicide attempt); *State v. Cobb,* 229 Kan. 522, 625 P.2d 1133, 1136 (1981) (defendant inject-

ed victim with lethal dose of cocaine and then shot victim); *State v. Fuller*, 203 Neb. 233, 278 N.W.2d 756, 758, 761 (1979) (defendant injected air into victim's veins at victim's request); *State v. Sexson*, 117 N.M. 113, 869 P.2d 301, 304–05 (App.1994) (defendant shot victim); *State v. Bouse*, 199 Or. 676, 264 P.2d 800, 812 (1953) (defendant drowned wife in bathtub, allegedly at her request), *overruled on other grounds by State v. Fischer*, 232 Or. 558, 376 P.2d 418, 421 (1962); *Turner v. State*, 119 Tenn. 663, 108 S.W. 1139, 1141 (1908) (defendant shot victim).

We applied similar principles in deciding the issues that were before us in *State v. Marti*, 290 N.W.2d 570 (Iowa 1980). There, the defendant had loaded a revolver and placed it within reach of his suicidal girlfriend. She picked up the gun and discharged it so as to fatally wound herself. In affirming the defendant's conviction for involuntary manslaughter, we concluded that "[t]he criminal is held to answer for his conduct because it constitutes murder or manslaughter, not because it coincidentally helped someone to die who wanted to die anyway." *Id.* at 581. We conclude that similar concerns dictate that we reject defendant's joint suicide pact defense in the present case.

Defendant argues that his own suicidal intent takes this case outside of the generally accepted rule that one who performs an overt act resulting in another's death is criminally responsible. We disagree. Defendant's only authority for the position he now advocates is the decision of the California Supreme Court in *In re Joseph G.*, 34 Cal.3d 429, 194 Cal. Rptr. 163, 667 P.2d 1176 (1983). In that case, the defendant and a companion had agreed to end their lives by driving an automobile off a cliff. Defendant drove the vehicle off the cliff, killing his companion but not himself. The California court held that, because a joint suicide pact was involved, the defendant was guilty of aiding and abetting suicide rather than murder and that this was not a punishable act. We conclude that this decision of the California court may not be reconciled with the general rule involving killing of one who wishes to die.

In analyzing the joint suicide pact, we must separately consider the effect of Alicia's desire to die and defendant's desire to die. As previously noted, Alicia's suicidal intent is no defense under a substantial body of authority from other states and our own *Marti* case. Defendant's suicidal intent is simply irrelevant to the issue of his criminal culpability for killing another person. No basis exists for concluding that his suicidal state of mind prevented him from appreciating the nature of his actions in killing Alicia or from knowing that those actions were wrong. That is the test in this state for successfully presenting a defense to otherwise criminal acts as a result of mental incapacity. *State v. Hall*, 214 N.W.2d 205, 207 (Iowa 1974); *State v. Carstens*, 182 N.W.2d 119, 120 (Iowa 1970). Nor does a suicidal state of mind measure up to the requirements of a diminished-capacity defense as to any element of voluntary manslaughter. *See State v. Gramenz*, 256 Iowa 134, 140, 126 N.W.2d 285, 288 (1964) (permits proof of defendant's mental condition only on the issue of his capacity to form a specific intent in those instances in which the state must prove that intent as an element of the crime).

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**