# IN THE SUPREME COURT OF IOWA

No. 13–1573

Filed October 23, 2015

**STATE OF IOWA,**

Appellee,

vs.

**JOSEPH D. CERETTI,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.

A criminal defendant appeals the sentences imposed after he pled guilty to multiple offenses, contending the convictions should merge because voluntary manslaughter requires that the defendant have specific intent to kill. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT VACATED; CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and Jaki M. Livingston, Assistant County Attorney, for appellee.

**HECHT, Justice.**

The State of Iowa charged Joseph Ceretti with first-degree murder. In exchange for lesser charges, Ceretti pled guilty to voluntary manslaughter, attempted murder, and willful injury causing serious injury, and offered factual bases for them at a plea hearing. In this appeal, Ceretti contends the attempted murder and willful injury convictions entered under the plea agreement must merge with the voluntary manslaughter conviction because the crimes share a common mens rea element: specific intent to kill. We conclude under the circumstances presented here that the voluntary manslaughter and attempted murder convictions are mutually exclusive because one cannot be convicted of a completed homicide and an attempt to commit the same homicide without sufficient unit-of-prosecution evidence supporting separate charges. Because the parties' expectations under the plea agreement cannot be achieved as a consequence of these mutually exclusive offenses, we conclude all of Ceretti's convictions must be vacated and remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

In the early morning hours of November 26, 2012, residents of a Des Moines neighborhood called 911 and reported an injured person lying in the street near the intersection of East 17th Street and Walnut Street. Police responded to the call and encountered Eric Naylor, who was covered in blood and had multiple stab wounds. Naylor received some emergency medical assistance, but his injuries were fatal and he passed away that evening. An autopsy revealed the stab wounds caused Naylor's death.

Police conducted an investigation, eventually arrested Ceretti, and charged him with first-degree murder. Before trial was to begin, the parties reached a plea agreement. No written memorialization of it appears in the record, but the parties announced the terms of the agreement during the plea colloquy before the district court. Ceretti agreed to plead guilty if the State filed an amended trial information, and the district court granted the State's subsequent motion to amend. Instead of first-degree murder, the amended trial information charged Ceretti with voluntary manslaughter, attempted murder, and willful injury causing serious injury. *See* Iowa Code §§ 707.4, .11 (2011); *id.* § 708.4(1).

Ceretti entered an *Alford* plea[1] to the attempted murder charge, but pled guilty to the other two charges.[2] He agreed to join the State's sentencing recommendation: a twenty-five-year prison sentence for attempted murder and two ten-year sentences (one for voluntary

[1]*See North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167, 27 L. Ed. 2d 162, 171 (1970) (permitting criminal defendants to enter a plea and "consent to the imposition of a prison sentence even if [they are] unwilling or unable to admit . . . participation in the acts constituting the crime").

[2]The State posits that the crime the Code labels "attempted murder" is actually "attempted homicide" because it does not require malice aforethought. *See* Iowa Code §§ 707.1 (defining murder to require malice aforethought), .11 (criminalizing "attempt to commit murder" but requiring only the specific "intent to cause the death of another"); *see also State v. Chenoweth*, 226 Iowa 217, 220, 284 N.W. 110, 111–12 (1939) (noting statutes' titles should not be dispositive).

The legislature first enacted section 707.11 in 1976 as "attempt to commit homicide." 1976 Iowa Acts ch. 1245, § 711. But just one year later, it specifically replaced "homicide" with "murder" in both the statute's title and the text of the provision. 1977 Iowa Acts ch. 147, § 711. Thus, it does not appear that the inclusion of the word "murder" was a mere oversight by the code editor. *See State v. Kehoe*, 804 N.W.2d 302, 312 (Iowa Ct. App. 2011) (mentioning only the 1976 enactment, not the 1977 amendment, and concluding the word "murder" in section 707.11 was a code editor error rather than a deliberate legislative choice). We need not decide the significance, if any, of the change in nomenclature effected by the 1977 amendment because it is ultimately immaterial to our decision in this case.

manslaughter and one for willful injury), to be served consecutively with no eligibility for parole or work release for seventeen-and-one-half years consistent with Iowa Code section 902.12(2).

The district court questioned Ceretti extensively during the plea proceeding in determining whether he entered his pleas knowingly and voluntarily. The court enumerated the elements of each crime included in the plea agreement and asked questions of Ceretti for the purpose of providing a factual basis for his guilty pleas. Ceretti admitted he was in an altercation with Naylor on November 26, and during that altercation, he became so incensed that he used a knife to stab Naylor, intending to cause serious injury. Ceretti also admitted the multiple stab wounds he inflicted caused Naylor's death. The State did not contest Ceretti's conclusory agreement with his counsel that his anger during the altercation constituted "serious provocation" within the meaning of the voluntary manslaughter statute. *See id.* § 707.4.[3] Further, Ceretti stated he was entering an *Alford* plea to the attempted murder charge to take advantage of plea negotiations and sentencing benefits—specifically, to avoid the lifetime prison sentence he would receive if a jury were to convict him of first-degree murder. *See id.* § 707.2 (providing first-degree murder is a class "A" felony); *id.* § 902.1(1) (mandating life sentences for offenders convicted of class "A" felonies).

The district court accepted each of the pleas. In furtherance of immediate sentencing, Ceretti waived the time to file a motion in arrest of judgment and waived his right to have the court consider a presentence

---

[3]The 2011 Code did not number every subsection of section 707.2, section 707.4, or section 707.11. The legislature added subsection numbers in 2013. 2013 Iowa Acts ch. 30, § 199; *id.* ch. 90, §§ 224, 226.

investigation report. The district court adopted the parties' sentencing recommendation and sentenced Ceretti to consecutive prison sentences totaling forty-five years—twenty-five years with a seventy percent mandatory minimum for attempted murder, ten years for voluntary manslaughter, and ten years for willful injury.

Ceretti appealed, contending attempted murder and willful injury are both included offenses of voluntary manslaughter, and therefore, the three convictions should merge and his total sentence should not exceed ten years. We transferred the case to the court of appeals, which rejected Ceretti's contentions, concluded attempted murder and willful injury resulting in serious injury are not included offenses of voluntary manslaughter because the latter offense can be committed without a specific intent to kill, and affirmed the district court. Ceretti then sought further review, and we granted his application.

## II. The Parties' Positions.

**A. Ceretti.** Ceretti asserts it is impossible to commit voluntary manslaughter without also committing attempted homicide and willful injury. Accordingly, Ceretti contends Iowa Code section 701.9 and Iowa Rule of Criminal Procedure 2.22(3) mandate that all three offenses merge. *See id.* § 701.9; Iowa R. Crim. P. 2.22(3). The linchpin of Ceretti's contention is the premise that one element of voluntary manslaughter is the defendant's specific intent to kill. *See State v. Hellwege*, 294 N.W.2d 689, 690 (Iowa 1980) ("Although no intent element is specified, a requirement of intent to kill may be inferred from the language of [Iowa Code] section 707.4.").

Ceretti contends in that alternative that even if we conclude the convictions for attempted murder and voluntary manslaughter do not merge because those offenses do not share a common specific intent

element, we should hold the convictions merge because a defendant cannot be convicted of both a homicide and an attempt to commit the same homicide.

**B. The State.** The State asserts Ceretti's decision to appeal after he initially assented to the plea deal constitutes an improper attempt "to transform what was a favorable plea bargain in the district court to an even better deal on appeal." *State v. Walker*, 610 N.W.2d 524, 526 (Iowa 2000). Accordingly, the State urges that Ceretti waived the right to appeal the sentences imposed by pleading guilty and agreeing to the State's sentencing recommendations. *See State v. Rasmus*, 249 Iowa 1084, 1086, 90 N.W.2d 429, 430 (1958) ("Certainly defendant could not complain of a ruling he asked the court to make."); *State v. Jensen*, 245 Iowa 1363, 1371, 66 N.W.2d 480, 484 (1954) ("[A] party may not sit by and permit the court to commit inadvertent error without protest, and then complain for the first time . . . in the appellate court.").

However, the State also asserts we need not decide the waiver question because voluntary manslaughter does not contain a specific intent-to-kill element. Indeed, the State contends voluntary manslaughter contains *no* specific intent element whatsoever, making it possible to commit voluntary manslaughter without committing either attempted homicide or willful injury—both of which require specific mental states. *See* Iowa Code § 707.11 ("with the intent to cause the death of another person"); *id.* § 708.4 ("intended to cause serious injury to another"). Accordingly, the State asks us to uphold Ceretti's sentence in its entirety. If we conclude Ceretti's convictions merge, the State requests we vacate the entire plea agreement and allow it to reinstate the first-degree murder charge, thereby declining to reward any attempt to manipulate the court system. *Cf. State v. Potts*, 240 N.W.2d 654, 657

(Iowa 1976) (noting a defendant's success "should not turn on defense gamesmanship").

### III. Scope of Review.

Ceretti asserts the district court's sentence violated the merger statute. *See* Iowa Code § 701.9 ("No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted."). "Section 701.9 codifies the double jeopardy protection against cumulative punishment." *State v. Gallup*, 500 N.W.2d 437, 445 (Iowa 1993); *see also State v. Bullock*, 638 N.W.2d 728, 731 (Iowa 2002). We review challenges under the merger statute to correct errors at law. *State v. Stewart*, 858 N.W.2d 17, 19 (Iowa 2015); *State v. Finnel*, 515 N.W.2d 41, 43 (Iowa 1994).

### IV. Analysis.

**A. The Elements Test.** To determine whether section 701.9 requires that convictions merge, we examine legislative intent. *Bullock*, 638 N.W.2d at 731; *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). "Legislative intent is indicated, in part, by whether the crimes at issue meet the legal elements test for lesser-included offenses." *Bullock*, 638 N.W.2d at 731; *accord Halliburton*, 539 N.W.2d at 344; *Finnel*, 515 N.W.2d at 43. If one offense is not an included offense within the other, "there is a presumption that multiple punishments can be assessed." *Finnel*, 515 N.W.2d at 43.

The legal elements test is often called the *Blockburger* test. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306, 309 (1932). To apply the *Blockburger* test, "we compare the elements of the two offenses to determine whether it is possible to commit the greater offense without also committing the lesser offense." *Halliburton*, 539 N.W.2d at 344.

Ceretti asserts both attempted murder and willful injury merge with voluntary manslaughter. Attempted murder consists of two elements: (1) an act, (2) done with intent to cause another person's death. *See* Iowa Code § 707.11(1). Ceretti also pled guilty to willful injury causing serious injury, which consists of three elements: (1) an act, (2) done with intent to cause serious injury, from which (3) serious injury results. *See id.* § 708.4(1).

Voluntary manslaughter also consists of three elements: (1) an act, (2) done with "sudden, violent, and irresistible passion resulting from serious provocation," from which (3) death results. *Id.* § 707.4(1). Comparing the elements of voluntary manslaughter with the elements of attempted murder and willful injury, the elements plainly do not align. Each offense "requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182, 76 L. Ed. at 309. Attempted murder requires specific intent to kill, but voluntary manslaughter does not. Similarly, voluntary manslaughter requires a death, whereas attempted murder does not. Along the same lines, willful injury requires a specific intent to injure, whereas voluntary manslaughter does not require any specific intent.

Nonetheless, Ceretti asserts although intent to kill is not a statutory element of voluntary manslaughter, it is an implicit element. *See Hellwege*, 294 N.W.2d at 690; *State v. Conner*, 292 N.W.2d 682, 685 (Iowa 1980) ("[T]his court has, on a number of occasions, construed a statute to include a criminal intent element absent from its face."). If Ceretti is correct, then attempted murder and voluntary manslaughter merge notwithstanding their statutory differences. We now turn to examine Ceretti's assertion.

**B.** **Specific Intent to Kill.** Iowa Code section 707.4 defines voluntary manslaughter:

> A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

Iowa Code § 707.4. Yet, despite this detailed definition of the crime, "[t]he authorities do not agree on whether an intent to kill is necessary to constitute voluntary manslaughter." *State v. Boston*, 233 Iowa 1249, 1255, 11 N.W.2d 407, 410–11 (1943).

"It is true we have referred to voluntary manslaughter as an intentional killing . . . ." *Id.* at 1256, 11 N.W.2d at 411; *see Conner*, 292 N.W.2d at 684; *State v. Millspaugh*, 257 N.W.2d 513, 516 (Iowa 1977); *State v. Gillick*, 7 Iowa 287, 298 (1858) ("Intentional killing is not necessarily deliberate or premeditated, nor even malicious, for the crime may be only manslaughter . . . ."). "But the expression, intentional killing, is not used in the sense that a specific intent to kill must be admitted or established." *State v. Gordon*, 85 S.E.2d 322, 323 (N.C. 1955). Instead, the expression refers "to the fact that the [a]ct which resulted in death is intentionally committed." *State v. Ray*, 261 S.E.2d 789, 794 (N.C. 1980); *see also Gillick*, 7 Iowa at 298 (stating a homicide could be manslaughter "though the act be intentional"); *cf. State v. Shaver*, 197 Iowa 1028, 1031–32, 198 N.W. 329, 331 (1924) ("The defendant testifies, and it is probably true, that he did not intend to kill . . . . But he nowhere denies that he did not intend to do just what he

did do, that is, to strike [the] deceased several times with his fists with great force.").

For the purposes of this case, the crucial phrase in section 707.4 is "under circumstances which would otherwise be murder." Ceretti's contention that voluntary manslaughter contains an intent-to-kill element derives from the notion that someone who acts with intent to kill, and who would therefore fall within our first-degree murder statute, *see* Iowa Code § 707.2(1), is guilty only of voluntary manslaughter if acting under serious provocation as provided in section 707.4.

We acknowledge that voluntary manslaughter *can* be committed under circumstances which would otherwise be first-degree murder. But if, as Ceretti contends, intent to kill is an element of voluntary manslaughter, it would follow that such intent must be proved in support of *every* voluntary manslaughter conviction. Herein lies the flaw in Ceretti's merger analysis because one may commit voluntary manslaughter without intending to kill.

Voluntary manslaughter occurs "under circumstances which would otherwise be murder." *Id.* § 707.4. Murder is a killing with malice aforethought, and is presumptively second-degree murder unless the circumstances elevate it to first-degree murder. *Compare id.* §§ 707.1, .3, *with id.* § 707.2(1). Malice aforethought is a general intent, a state of mind that need not be accompanied by a specific intent to kill. *See State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010) ("It is well-settled law that murder in the second degree is a general intent crime . . . ."); *State v. Christie*, 243 Iowa 1199, 1204, 53 N.W.2d 887, 889 (1952) (noting the State must prove intent to kill in addition to malice to obtain a first-degree murder conviction); *see also State v. Smith*, 242 N.W.2d 320, 326 (Iowa 1976) ("[M]alice aforethought is not to be equated with specific

intent to kill."); *State v. Gibbons*, 142 Iowa 96, 98, 120 N.W. 474, 475 (1909) ("The crime of murder in the second degree necessarily involves an act done with malice aforethought. But that term used in defining the crime is technical rather than descriptive. It does not necessarily require an intent to murder."). (Citation omitted.)).[4] Thus, section 707.4 leaves room for the possibility that a person could commit voluntary manslaughter under circumstances which would otherwise be only second-degree murder. *See* 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law & Procedure* § 145, at 41 (1979) [hereinafter Yeager & Carlson] ("[Section 707.4] applies to reduce both first degree and second degree murder to manslaughter if the prescribed conditions exist.").

Because a person could commit voluntary manslaughter under circumstances which would otherwise be second-degree murder, specific intent to kill is not an essential element of voluntary manslaughter. We have recognized for over seventy years that some—but not all— manslaughter crimes are committed with a specific intent to kill. *See Boston*, 233 Iowa at 1256, 11 N.W.2d at 411 (noting "manslaughter *may be* committed where there is an intent to take life, *if*" the defendant forms that intent impulsively (emphasis added)). We reaffirm here that a voluntary manslaughter conviction can be sustained without proof of

---

[4]*But see State v. Zeibart*, 40 Iowa 169, 174 (1874) ("[A]n intent to kill is malice aforethought."); 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law & Procedure* § 135, at 36–37 (1979) ("Malice aforethought may be found in the intent to kill, where no justification or mitigating circumstances can be shown."). We conclude these authorities do not conflict with the proposition that malice aforethought is not necessarily accompanied by an intent to kill. A person who acts with intent to kill also acts with malice aforethought, but the converse is not necessarily true. *Cf. Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 848 (Iowa 2015) (Hecht, J., dissenting) ("Every square is a rectangle, but not every rectangle is a square.").

specific intent to kill. "[W]e will not accept . . . the most commonly negated mens rea for voluntary manslaughter as dictating the only possible one for the offense." *State v. Shabazz*, 739 A.2d 666, 669 (Vt. 1999).

Additionally, we have previously noted—albeit impliedly—that voluntary manslaughter contains no specific intent element. *State v. Couser*, 567 N.W.2d 657, 661 (Iowa 1997). In *Couser*, we concluded a defendant's suicidal state of mind did not "measure up to the requirements of a diminished-capacity defense as to any element of voluntary manslaughter" because diminished-capacity defenses are available only against crimes for which the state must prove the defendant's specific intent as an element of the offense. *Id.*; *see State v. Gramenz*, 256 Iowa 134, 138–39, 126 N.W.2d 285, 288 (1964).

Furthermore, if voluntary manslaughter contains a specific intent element, a person could commit second-degree murder without also having the requisite intent for voluntary manslaughter. *See State v. Montgomery*, 39 So. 3d 252, 256 (Fla. 2010) (concluding specific intent to kill is not an element of voluntary manslaughter because "to impose such a requirement . . . would impose a more stringent finding of intent upon manslaughter than upon second-degree murder"). Yet the legislature has declared that voluntary manslaughter "is an included offense under an indictment for murder in the first or second degree." Iowa Code § 707.4. We interpret section 707.4 to preserve the legislature's express directive.

Our conclusion is consistent with decisions from courts in several other jurisdictions holding intent to kill is not an element of voluntary manslaughter. *See, e.g., United States v. Paul*, 37 F.3d 496, 499 n.1 (9th Cir. 1994) ("While most voluntary manslaughter cases involve intent to

kill, it is possible that a defendant who killed unintentionally but . . . with extreme disregard for human life may have acted in the heat of passion with adequate provocation."); *People v. Bryant*, 301 P.3d 1136, 1141 (Cal. 2013) ("A defendant commits voluntary manslaughter when a homicide that is committed *either* with intent to kill *or* with conscious disregard for life—and therefore would normally constitute murder—is nevertheless reduced or mitigated to manslaughter." (Emphasis added.)); *Montgomery*, 39 So. 3d at 256 ("[I]n *some* cases of manslaughter . . . it may be inferred from the facts that the defendant intended to kill the victim . . . ." (Emphasis added.)); *State v. Porter*, 128 P.3d 908, 912 (Idaho 2005) ("To the extent that prior cases state that the intent to kill is a necessary element of voluntary manslaughter, those cases are disavowed."); *State v. Keffer*, 860 P.2d 1118, 1138 (Wyo. 1993) ("Manslaughter . . . is a general intent crime that does not require a deliberate intent to kill."). We decline Ceretti's invitation to supplement section 707.4 with an implicit specific intent element. *See State v. Taylor*, 452 N.W.2d 605, 606 (Iowa 1990) (concluding malice aforethought is not an element of voluntary manslaughter either).

**C. Conviction for Attempt and a Completed Crime.** Our conclusion that voluntary manslaughter does not require specific intent to kill does not end our analysis, however. Ceretti contends attempted murder should still merge with voluntary manslaughter because attempted crimes merge once completed. *See* Iowa R. Crim. P. 2.22(3) ("Upon trial of an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged . . . , and guilty of any degree inferior thereto, *or* of an attempt to commit the offense when such attempt is prohibited by law." (Emphasis added.)). His contention sets forth a syllogism. First, voluntary manslaughter is a lesser included

offense of murder. Iowa Code § 707.4. Second, attempted murder is a selectively criminalized attempt, so it denotes an instance "when . . . attempt is prohibited by law." Iowa R. Crim. P. 2.22(3); *see* Iowa Code § 707.11. Therefore, Ceretti asserts that because both crimes fall along the spectrum of offenses between attempted murder and first-degree murder, the attempted homicide merges into the completed one.

Although we have concluded the *Blockburger* test does not require merger under the circumstances presented here, we agree rule 2.22(3) prevents the State from punishing Ceretti for both attempting and completing the same homicide. In cases decided in the late 19th century and the early 20th century, we indicated that although voluntary manslaughter is a lesser included offense of murder, we did not consider it a *degree* of murder. *See State v. Brown*, 152 Iowa 427, 437, 132 N.W. 862, 866 (1911); *State v. White*, 45 Iowa 325, 327 (1876). That is still true in a textual sense—we do not call voluntary manslaughter "third-degree murder"—but for purposes of determining whether sentences constitute double punishment, we conclude the legislature did not intend to punish a defendant for both an attempted homicide and a completed homicide when the convictions are based on the same act or acts directed against the same victim. *See* 4 Yeager & Carlson § 131, at 35 (noting after the criminal code revision in the 1970s, "[t]here are now five degrees of homicide"); *see also* 4 Robert R. Rigg & B. John Burns, *Iowa Practice: Criminal Law & Procedure* § 144, at 62 (Supp. 2001) ("[V]oluntary manslaughter is more realistically viewed as a diminished form of murder, rather than a completely separate offense. . . . There is no realistic view of voluntary manslaughter that does not consider it a lesser degree of murder . . . .").

"Iowa does not have a general attempt statute. . . . As a result, our attempt law is relatively undeveloped." *State v. Walker*, 856 N.W.2d 179, 187 (Iowa 2014). Of course, "[i]t is also clear . . . that a defendant may not be convicted of both the attempt and the completed crime, because all the elements of the attempt are included in the completed offense and a dual conviction would amount to double jeopardy." *United States v. Rust,* 650 F.2d 927, 928 (8th Cir. 1981) (per curiam); *cf. State v. Waterbury,* 307 N.W.2d 45, 51–52 (Iowa 1981) (merging a conviction for conspiracy to commit murder into a conviction for completing the same murder). However, this case features a unique wrinkle: Ceretti was not convicted of both attempted murder and murder; he was convicted of attempted murder and voluntary manslaughter—something less than murder.

We conclude that wrinkle does not legitimize punishment for both an attempted murder of one victim and the homicide of that same victim from the same acts. We analogize here to the judicially-created one-homicide rule. *See State v. Fix*, 830 N.W.2d 744, 747–48 (Iowa Ct. App. 2013) (tracing the history of the one-homicide rule). The rule prohibits "a trial court from entering judgments and imposing sentences for multiple homicide offenses if the defendant was convicted for killing only one person." *Id.* at 745; *see also State v. Wissing*, 528 N.W.2d 561, 567 (Iowa 1995).

The court of appeals has observed that "attempt to commit murder is not a homicide offense," so convictions for both attempted murder and voluntary manslaughter do not violate the one-homicide rule. *Termaat v. State,* 867 N.W.2d 853, 856 (Iowa Ct. App. 2015); *accord People v. Latham*, 631 N.E.2d 83, 85 (N.Y. 1994) ("Attempted murder—which fails to cause the death of a person—is . . . by definition a 'nonhomicide'

offense."). That is true, of course; attempted murder is not a homicide offense. But we conclude the principle underlying the one-homicide rule—that multiple punishments for homicide are not allowed when the defendant kills one person—applies equally when one of the offenses is attempted murder. Therefore, rule 2.22(3) applies in this case. A defendant may not be convicted of both an attempted homicide and a completed homicide when the convictions are based on the same acts directed against the same victim. *Cf. People v. Sullivan*, 6 N.E.3d 888, 902 (Ill. App. Ct. 2014) (vacating an aggravated battery conviction after the defendant was convicted of both aggravated battery and first-degree murder for harming one victim because the "defendant attacked his [victim] in a single, generalized instance").

**D. Disposition.** We now turn to the appropriate disposition. Sometimes, when we conclude a conviction or sentence is improper on a particular record, we reverse the conviction and remand for resentencing to eliminate part of the sentence, while letting the balance of the sentence stand. *State v. Mapp*, 585 N.W.2d 746, 749 (Iowa 1998); *State v. Axline*, 450 N.W.2d 857, 860 (Iowa 1990); *accord Fix*, 830 N.W.2d at 751. If we were to follow that dispositional course in this case, we would vacate Ceretti's conviction for attempted murder and remand for resentencing on the voluntary manslaughter and willful injury causing serious injury convictions.

However, some courts faced with analogous circumstances apply principles of contract law and vacate the entire plea agreement. For example, the Colorado Supreme Court has stated:

> [W]hen a defendant enters into a plea agreement that includes as a material element a recommendation for an illegal sentence and the illegal sentence is in fact imposed on the defendant, the guilty plea is invalid and must be vacated

because the basis on which the defendant entered the plea included the impermissible inducement of an illegal sentence.

*Chae v. People*, 780 P.2d 481, 486 (Colo. 1989) (en banc); *see also Sweetwine v. State*, 398 A.2d 1262, 1265 (Md. Ct. Spec. App. 1979) ("[T]he whole package of reciprocal arrangements and obligations is conditional. The condition is the continuing health of the guilty plea. If it is voided, both the defendant and the state return to 'square one.' " (Footnote omitted.)), *aff'd*, 421 A.2d 60, 69 (Md. 1980); *State v. Briggs*, 579 N.W.2d 783, 789 (Wis. Ct. App. 1998) ("We . . . vacate the amended information and reinstate the original information in order to restore the parties to the positions they had before they made an agreement based on an inaccurate view of the law . . . .").

We conclude the circumstances of this case require us to follow the latter course because, as the State contends, Ceretti's appeal effectively "seeks to transform what was a favorable plea bargain in the district court to an even better deal on appeal." *Walker*, 610 N.W.2d at 526; *see also People v. Evans*, 673 N.E.2d 244, 248 (Ill. 1996) (refusing to let a defendant "negotiate with the State to obtain the best possible deal in modifying or dismissing the most serious charges and obtain a lighter sentence . . . and then attempt to get that sentence reduced even further"). Ceretti "willingly embraced the . . . sentence in the plea agreement in return for not risking life imprisonment following a guilty verdict at trial." *Fix*, 830 N.W.2d at 750. If we were simply to sever Ceretti's sentence for attempted murder, defendants might be motivated to enter plea agreements quietly—even if they have double punishment concerns—and then appeal them to obtain a more lenient sentence. *Cf. State v. Bittinger*, 549 A.2d 10, 11–12 (Md. 1988) (refusing to countenance a defendant's attempt to surprise the State by agreeing to a

plea deal and then contending, immediately after the State dismissed the original charges, that he could not be guilty of the amended charge as a matter of law).

To avoid that problem, we do in this case what we have done in others involving an invalid plea agreement: We vacate all three convictions and the entire plea bargain and remand the case to the district court. *See State v. Allen*, 708 N.W.2d 361, 369 (Iowa 2006); *State v. Hack*, 545 N.W.2d 262, 263 (Iowa 1996). "On remand, the State may reinstate any charges dismissed in contemplation of a valid plea bargain, if it so desires, and file any additional charges supported by the available evidence." *Allen*, 708 N.W.2d at 369; *see also State v. Sanders*, 309 N.W.2d 144, 147 (Iowa Ct. App. 1981). We conclude this disposition is appropriate because simply allowing the other sentences to stand would give "the defendant the benefit of reducing his maximum sentence [substantially], contrary to the plea agreement." *State v. Robinson*, 638 N.W.2d 564, 572 (Wis. 2002), *abrogated on other grounds by State v. Kelty*, 716 N.W.2d 886, 901 (Wis. 2006); *cf. State v. Krawczyk*, 657 N.W.2d 77, 88 (Wis. Ct. App. 2002) (declining to vacate an entire plea agreement when the "total sentence on the remaining charges d[id] not substantially deprive [the State] of the benefit of the plea agreement it made"). Of course, the parties may negotiate a new plea agreement on remand or try the case.

### V. Conclusion.

A defendant may not be convicted of both an attempted homicide and a completed homicide when the convictions are based on the same acts directed against the same victim. Because Ceretti's plea agreement contravenes this principle, we vacate the agreement and the resulting

convictions. We remand the case to the district court for further proceedings consistent with this opinion. Costs are taxed to the State.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT VACATED; CASE REMANDED.**