# In the Iowa Supreme Court

No. 24–0353

Submitted October 8, 2025—Filed January 9, 2026

**State of Iowa,**

Appellee,

vs.

**Ronald Richard Pagliai,**

Appellant.

Appeal from the Iowa District Court for Polk County, Tabitha Turner, district associate judge.

Defendant seeks discretionary review of dispositional orders assessing costs in dismissed cases. **Convictions, Sentences, and Dispositional Orders Vacated and Cases Remanded.**

McDonald, J., delivered the opinion of the court, in which Mansfield, Oxley, and May, JJ., joined. McDermott, J., filed an opinion concurring in the judgment. Waterman, J., filed a dissenting opinion, in which Christensen, C.J., joined.

Erin M. Carr (argued) of Carr Law Firm, P.L.C., Des Moines, and Ronald W. Kepford (until withdrawal) of Kepford Law Office, Winterset, for appellant.

Brenna Bird, Attorney General, and David Banta (argued), Louis S. Sloven (until withdrawal), and Linda J. Hines (until withdrawal), Assistant Attorneys General, for appellee.

Alexander Vincent Kornya (argued) and Rita Bettis Austen of ACLU of Iowa Foundation, Inc., Des Moines, and Charles Moore of Public Justice, Washington,

D.C., for amici curiae ACLU of Iowa, Fines and Fees Justice Center, and Public Justice.

**McDonald, Justice.**

This case presents the question of whether the parties in a criminal case can, by plea agreement, confer on the district court the authority to dispose of a criminal case in a manner not authorized by statute. Ronald Pagliai was charged with theft in the third degree, enhanced, in three separate cases for shoplifting, and he was charged with interference with official acts in a fourth case when he resisted arrest after being caught shoplifting. As part of a single plea agreement to resolve the cases, Pagliai agreed to plead guilty in two of the theft cases, and the State agreed to dismiss the two remaining cases with Pagliai to pay the costs in the dismissed cases. Pursuant to the plea agreement, the district court sentenced Pagliai in the two theft cases, dismissed the two other cases, and ordered Pagliai to pay costs in the dismissed cases (a docket search shows the costs as $329.85 for indigent defense fund recoupment and $160 for filing fees). Pagliai filed notices of appeal from his convictions, and we granted Pagliai's application for discretionary review to address his challenge to the district court's authority to assess costs in the dismissed cases.

I.

A.

Matters of crime and punishment are creatures of statute. The legislative department has the sole "power and the responsibility to define crimes and prescribe punishment." *State v. Fuhrmann*, 261 N.W.2d 475, 479 (Iowa 1978) (en banc); *see State v. Jepsen*, 907 N.W.2d 495, 501 (Iowa 2018) ("In sum, the legislature has the substantive power to define criminal activity and its attendant punishment."). The legislative department's power and responsibility to define crimes and prescribe punishments includes the power to prescribe whether and how the district court can assess costs upon the disposition of a criminal case.

The judicial department must administer the criminal law in accord with legislative command. *See State v. Campbell*, 251 N.W. 717, 719 (Iowa 1933) (stating that it is "settled in this state that there are no common-law offenses and that all crimes are statutory"); *State v. McGrew*, 11 Iowa 112, 113 (1860) ("We cannot look to the common law for a 'manner' of prosecution and punishment . . . ."). The judicial department does not have the authority to assess costs upon disposition of a criminal case in the absence of statutory authorization to do so. *See City of Ottumwa v. Taylor*, 102 N.W.2d 376, 378 (Iowa 1960) (stating that costs "are now taxable only to the extent provided by statute"); 20 Am. Jur. 2d *Costs* § 100, at 116 (2015) ("The right of a court to impose costs in a criminal case is statutory, and thus, courts may impose costs in criminal cases only where such costs are authorized by statute."). As this court explained in *Woodbury County v. Anderson* almost sixty years ago, "Costs in criminal prosecutions are unknown at common law; their recovery in any criminal case depends wholly upon statutory provisions therefor." 164 N.W.2d 129, 133 (Iowa 1969) (quoting 20 Am. Jur. 2d, *Costs* § 100).

B.

The State concedes that no statute authorizes the district court to assess costs in dismissed criminal cases. We agree with the concession. Neither of the relevant chapters of the Code—chapters 815 and 910—authorize the district court to assess costs against the defendant in dismissed criminal cases.

Chapter 815 of the Code governs, among other things, the assessment and recoupment of indigent defense fees and costs. The Code authorizes the district court to assess indigent defense fees and costs against a defendant only when the defendant "is convicted in a criminal case" or is "acquitted in a criminal case" but only "to the extent the person is reasonably able to pay." Iowa Code

§ 815.9(5)–(6) (2023). A dismissal is neither a conviction nor an acquittal, so neither of these provisions is applicable here.

A prior version of section 815.9 authorized the district court to assess indigent defense fees and costs against the defendant in a dismissed case:

> If the case is a criminal case, all costs and fees incurred for legal assistance shall become due and payable to the clerk of the district court by the person receiving the legal assistance not later than the date of sentencing, or if the person is acquitted or the charges are dismissed, within thirty days of the acquittal or dismissal.

*Id.* § 815.9(4) (2012). But the legislature revoked that authority in 2012. *See* 2012 Iowa Act ch. 1063, § 8.

Chapter 910 of the Code governs the imposition of restitution in criminal proceedings. The Code defines restitution to include, among other things, "court costs" and "court-appointed attorney fees ordered pursuant to section 815.9." Iowa Code § 910.1(2) (2023). The Code authorizes the district court to order restitution only where "there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered." *Id.* § 910.2(1)(*a*). There is no judgment of conviction in a dismissed case. Thus, the district court has no statutory authority to impose restitution in a dismissed case.

## C.

Pagliai contends that the lack of any statute authorizing the district court to assess costs in a dismissed case creates a jurisdictional problem. In his view, the district court lacked jurisdiction to assess costs in a dismissed case. We disagree.

Pagliai conflates jurisdiction and authority. *See State v. Rutherford*, 997 N.W.2d 142, 144 (Iowa 2023) ("There is an important difference between a court's subject matter jurisdiction and its authority to act."). Jurisdiction is a court's power to preside over a case. *See State v. Mandicino*, 509 N.W.2d 481,

482 (Iowa 1993) (discussing jurisdiction). Authority is the district court's power to act in a case where it has jurisdiction. *See id.*

The district court here undoubtedly had jurisdiction over the case. The state constitution vests district courts with "jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law." Iowa Const. art. V, § 6. The constitutional grant of jurisdiction in criminal matters is confirmed by statute. *See* Iowa Code §§ 602.6101, .6202 (providing the district court is a court of general jurisdiction with power over all criminal matters). This was a criminal case subject to the district court's original jurisdiction. A district court loses jurisdiction over a criminal matter "once a final judgment is rendered." *State v. T.J.W.*, 2 N.W.3d 853, 857 (Iowa 2024) (quoting *State v. Olsen*, 794 N.W.2d 285, 287 (Iowa 2011)). In *State v. T.J.W.*, we held that the court lacked jurisdiction to order the defendant to pay restitution in a criminal case *after* the case had been dismissed. *Id.* at 859. "As a result," there was no statutory "basis for giving the court jurisdiction to enter the order." *Id.* at 858. Here, in contrast, the district court still had jurisdiction over the pending criminal cases at the time it entered the challenged disposition orders.

Thus, the proper question presented in this case is whether the district court had statutory authority to assess costs against Pagliai in the dismissed cases. We turn to that question next.

### D.

The district court's disposition of a criminal case not authorized by statute cannot be cured on the basis of contract, waiver, estoppel, or detrimental reliance.

The leading case is *State v. Howell*, 290 N.W.2d 355, 356 (Iowa 1980). In that case, the defendant was convicted of possession of a controlled substance with intent to deliver. *Id.* The parties agreed upon a probationary sentence not authorized by statute. *See id.* at 357. When the State later challenged the sentence, Howell argued that the sentence was bargained for and that the state should be "estopped from now challenging the bargain." *Id.* This court rejected Howell's argument, explaining that a bargained-for but unauthorized disposition impermissibly shifted lawmaking authority from the legislature to the parties and the courts:

> Because it was invalid, the sentence upon which he relies was outside the power or discretion of the sentencing court. There is no hint of deception. Apparently the presiding judge, the prosecutor, and Howell's own counsel honestly misapprehended the power of the trial court. Surely it should not lie within the authority of bargaining counsel and a willing judge to thus reshape the parameters of allowable punishment. If Howell were to prevail upon either of these contentions we would be left the anomalous situation in which parties could make their own law whenever a judge could be persuaded to allow it.

*Id.* at 358.

*Howell* was reaffirmed in *State v. Ohnmacht*, 342 N.W.2d 838, 840 (Iowa 1983). There, the defendant was convicted of two counts of first-degree robbery. *Id.* The district court, concluding it would be an injustice to sentence the defendant to the required sentence, suspended the defendant's sentence and placed the defendant on probation. *Id.* Approximately seven months later, the attorney general moved to correct the defendant's sentence as illegal. *See id.* at 840–41. This court rejected the defendant's claim that the sentence could be affirmed by agreement, waiver, or estoppel. *Id.* at 845. *Ohnmacht* explained that "[t]he legislature possesses the inherent power to prescribe punishment for crime, and the sentencing authority of the courts is subject to that power." *Id.* at

842 (quoting *State v. Iowa Dist. Ct.*, 308 N.W.2d 27, 30 (Iowa 1981)). "When the sentencing judge departed from the legislatively mandated sentence, the pronouncement became a nullity." *Id.* Relying on *Howell*, this court explained that the defendant's contention would impermissibly allow the parties to make their own law. *See id.* at 844–45. The court concluded that the "Defendant is not entitled to rely on a bargain struck to uphold an illegal sentence." *Id.* at 845.

In accord with *Howell* and *Ohnmacht*, Iowa's appellate courts have repeatedly held that an illegal sentence is void and cannot be upheld on the basis of contract, waiver, estoppel, or detrimental reliance. *See, e.g.*, *State v. Louisell*, 865 N.W.2d 590, 598 (Iowa 2015) ("Because there was no statutory authority for the determinate sentence of twenty-five years in prison . . . that part of the district court's sentencing order must be vacated."); *State v. Copenhaver*, 844 N.W.2d 442, 447 (Iowa 2014) ("An illegal sentence is a sentence that is not permitted by statute."); *State v. Iowa Dist. Ct.*, 630 N.W.2d 778, 779 (Iowa 2001) ("Because the district court had no power to sentence the defendant to a ten-year indeterminate sentence, we . . . vacate the defendant's sentence . . . ." (footnote omitted)); *State v. Woody*, 613 N.W.2d 215, 218 (Iowa 2000) (en banc) ("Neither party may rely on a plea agreement to uphold an illegal sentence."); *State v. Austin*, 503 N.W.2d 604, 607 (Iowa 1993) ("Our case law has provided that criminal sentences not authorized by statute are void and cannot be permitted to stand."); *State v. Draper*, 457 N.W.2d 600, 605 (Iowa 1990) ("[W]hen a sentencing court departs . . . from the legislatively authorized sentence for a given offense, the pronounced sentence is a nullity subject to correction . . . ."); *State v. Peterson*, 327 N.W.2d 735, 738 (Iowa 1982) (en banc) (rejecting contention that "estoppel mandated the enforcement of an invalid sentence"); *State v. Strable*, 313 N.W.2d 497, 499 (Iowa 1981) (same), *abrogated on other*

*grounds by, State v. White,* 9 N.W.3d 1, 9 (Iowa 2024); *Noble v. Iowa Dist. Ct.,* 919 N.W.2d 625, 631 (Iowa Ct. App. 2018) ("It is well established the parties cannot agree upon an illegal sentence."); *State v. Fix,* 830 N.W.2d 744, 747 (Iowa Ct. App. 2013) ("[T]he parties may not rely on a plea agreement to uphold an illegal sentence . . . ."); *State v. Hallock,* 765 N.W.2d 598, 602 (Iowa Ct. App. 2009) ("Void sentences are not subject to the usual concepts of waiver . . . .").

This case does not involve an illegal sentence. A sentence is the "judgment formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution, imposing the punishment to be inflicted." *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.,* 642 N.W.2d 255, 261 (Iowa 2002) (quoting *Sentence, Black's Law Dictionary* 1362 (6th ed. 1990)). A dispositional order does not follow a judgment of conviction. It is thus not a sentencing order. Because an order dismissing a case is a dispositional order and not a sentencing order, the imposition of costs in a dispositional order is not an illegal sentence within the meaning of Iowa Rule of Criminal Procedure 2.24(5).

Although this case involves a dismissal order rather than a sentencing order, the "distinction does not obviate the important policy considerations underlying the *Howell* decision." *Ohnmacht,* 342 N.W.2d at 844. The rationale in our illegal sentencing cases apply with equal force to any dispositional order in a criminal case because the district court's dispositional authority is prescribed by statute. *See, e.g., Overton v. State,* 493 N.W.2d 857, 859 (Iowa 1992) ("While *Wiese* and *Ohnmacht* both involve criminal sentencing, we believe that the reasoning employed in these cases is also applicable to unauthorized sanctions imposed in prison disciplinary proceedings."); *State v. Ryan,* 351 N.W.2d 186, 188 (Iowa 1984) ("The district court did not have any statutory or other power to

make this kind of decision. Despite personal beliefs or good intentions, the district court is bound to act only under its statutory authority.").

We recently addressed an unauthorized dispositional order in *State v. Rasmussen*, 7 N.W.3d 357 (Iowa 2024). In *Rasmussen*, as part of a global plea agreement to resolve different cases, the district court entered a no-contact order in a dismissed case without any objection from the defendant. *See id.* at 362. We concluded that the no-contact order was void even though it was entered in a dismissed case because a statutorily unauthorized disposition of a criminal case "cannot be affirmed on the basis of contract, waiver, estoppel, or detrimental reliance." *Id.* at 365.

As in *Howell, Ohnmacht*, and *Rasmussen*, allowing the parties to confer statutory authority on the district court to dispose of a case in a manner not allowed by statute would create the "anomalous situation in which parties . . . make their own law" because "a judge [was] persuaded to allow it." *Howell*, 290 N.W.2d at 358. In fact, affirming the dispositional orders in this case would allow the parties and the district court to exercise a veto of the legislature's 2012 repeal of this statutory authority.

Where, as here, no statute authorizes a district court to assess costs in a dismissed criminal case, the dismissal order is ultra vires and invalid. *See State v. Brown*, 905 N.W.2d 846, 857 (Iowa 2018) (stating that "an assessment of court costs for the dismissed simple misdemeanor charge" is illegal and vacating the order for costs); *State v. Vogel*, No. 18–0230, 2018 WL 6706231, at *2 (Iowa Ct. App. Dec. 19, 2018) (vacating order assessing costs on dismissed simple misdemeanor case); *State v. Landis*, No. 17–1369, 2018 WL 6720036, at *5 (Iowa Ct. App. Dec. 19, 2018) (same); *see also Thomas v. State*, 418 S.W.2d 792, 793 (Ark. 1967) ("The order assessing court costs against the defendant

upon dismissal of the indictment is void and of no effect . . . ."); *State v. Richey*, 569 S.W.3d 420, 423 (Mo. 2019) (en banc) ("Costs may only be granted 'by virtue of express statutory authority.' . . . '[N]o right to or liability for costs exists in the absence of statutory authorization.' " (alteration in original) (first quoting *State ex rel. Merrell v. Carter*, 518 S.W.3d 798, 800 (Mo. 2017) (en banc); and then quoting *Cramer v. Smith*, 168 S.W.2d 1039, 1040 (Mo. 1943) (en banc))).

E.

While the State concedes "that the district court lacked statutory authority to order [Pagliai] to pay costs for dismissed charges," it nonetheless urges us to affirm the assessment of costs. The State argues that our precedents allow the parties to bargain for the assessment of costs in dismissed cases. The State relies primarily on two cases in support of its argument: *State v. Petrie*, 478 N.W.2d 620 (Iowa 1991) (per curiam), and *State v. McMurry*, 925 N.W.2d 592 (Iowa 2019). We conclude the argument is unavailing.

*Petrie* and *McMurry* are distinguishable from this case. *Petrie* involved the assessment of court costs associated with dismissed counts in a multicount trial information where the defendant was convicted of at least one count in the information and a judgment of conviction was entered in the case. *Petrie*, 478 N.W.2d at 622. In that context, the *Petrie* court stated that the parties could bargain for the assessment and apportionment of costs. *Id. McMurry* was a follow-up to *Petrie*. In that case, the court addressed the manner of determining the "equitable apportionment of fees and court costs" in a multicount trial information where there was a conviction on one but not all of the counts in the information. *McMurry*, 925 N.W.2d at 594.

As is apparent, neither *Petrie* nor *McMurry* involved the assessment of costs in a dismissed case where there was no judgment of conviction. In addition,

in both *Petrie* and *McMurry*, a statute authorized the district court to assess costs against the defendant upon entry of the judgment of conviction. *See* Iowa Code § 910.2 (1989) ("In all criminal *cases* . . . upon which a judgment of conviction is rendered, the sentencing court shall order that restitution be made by each offender . . . for court costs . . . ." (emphasis added)); *id.* § 910.2 (2016). *Petrie* and *McMurry* merely hold that the parties may bargain for the assessment and apportionment of costs related to dismissed *charges* in a multicount trial information where there is a judgment of conviction in the case. *See State v. Headley*, 926 N.W.2d 545, 552–53 (Iowa 2019) (stating that *McMurry* held that "requiring a defendant to pay the court costs associated with the dismissed charges did not constitute an illegal sentence as long as the costs would have been incurred in prosecuting the charges that were not dismissed."). Those cases offer no support for the proposition that the district court can assess costs against the defendant in a dismissed case.

## II.

Having concluded that the district court's dispositional orders assessing costs against Pagliai were not authorized by statute and thus invalid, we must address the question of remedy. The question of remedy is somewhat complicated here because the problem extends beyond the unauthorized dispositional orders. If the district court had merely assessed costs in the dismissed cases on its own accord, we could simply vacate the orders without any further concern. *See Brown*, 905 N.W.2d at 857. Here, however, the parties bargained for a disposition not authorized by statute; the object of the plea agreement was unlawful. That fact complicates the issue.

It seems to us there are two potential remedies. *See Woody*, 613 N.W.2d at 218 ("If neither party may rely on the plea agreement, what remedy is

appropriate here? Do we allow the State to reinstate the original charge or do we remand for sentencing on the reduced charge?"). One remedy is to vacate the dispositional orders and enforce the remainder of the plea bargain. *See State v. Ceretti*, 871 N.W.2d 88, 97 (Iowa 2015). By vacating the unauthorized dispositional orders, however, we may create a perverse incentive for defendants "to enter plea agreements quietly," seek appellate review, and "transform what was a favorable plea bargain in the district court to an even better deal on appeal." *Id.* (quoting *State v. Walker*, 610 N.W.2d 524, 526 (Iowa 2000) (en banc)). A second remedy is to vacate all of the "convictions and the entire plea bargain and remand the case to the district court." *Id.* In *Ceretti*, this court concluded the second remedy was consistent with principles of bargaining and fairer to the State. *Id.*

We conclude that the best disposition of the claim is to allow the prosecutor to elect one of these two remedies on remand. *Noble*, 919 N.W.2d at 633. While vacating the dispositional orders and enforcing the remainder of the plea bargain might allow the defendant to turn a favorable plea into a better deal, in some circumstances the State may consider that a preferable remedy to vacating the plea bargain and all of the convictions and beginning anew. *Id.* The passage of time often works to the detriment of the prosecution: evidence is lost or degrades; witnesses move or pass away; of those witnesses who remain, memories fade. *See Est. of Kuhns v. Marco*, 620 N.W.2d 488, 491 (Iowa 2000) (en banc) (discussing these concerns in the context of stale claims). The prosecution must also consider whether the incremental gain in having the defendant pay costs is worth starting anew. These are legitimate concerns best left to the prosecutor's discretion.

III.

We vacate the defendant's convictions, sentences, and dispositional orders and remand these four cases for further proceedings. On remand, at the State's election, the district court shall either: (1) vacate the dispositional orders assessing fees and costs to the defendant; or (2) vacate the plea bargain, the resulting convictions, the sentences, and the dispositional orders. In the event the State elects the latter remedy, "the State may reinstate any charges dismissed in contemplation of a valid plea bargain, if it so desires, and file any additional charges supported by the available evidence." *Ceretti*, 871 N.W.2d at 97 (quoting *State v. Allen*, 708 N.W.2d 361, 369 (Iowa 2006)). Because we have concluded that the district court was without statutory authority to dispose of these cases in this manner, we need not reach the defendant's constitutional challenges to the dispositional orders.

**Convictions, Sentences, and Dispositional Orders Vacated and Cases Remanded.**

Mansfield, Oxley, and May, JJ., join this opinion. McDermott, J., files an opinion concurring in the judgment. Waterman, J., files a dissenting opinion, in which Christensen, C.J., joins.

**McDermott, Justice (concurring).**

The title of Dostoevsky's *Crime and Punishment* succeeds in part because of the intuitive, seemingly inevitable connection between the two concepts: basic notions of justice tell us that commission of a crime leads to punishment. But the plea practice spotlighted in this case—where a prosecutor agrees to dismiss a criminal charge in exchange for a defendant's agreement to pay costs—contorts the title's equation into one lacking either intuitive spark or elemental justice; we have no crime, yet punishment.

The claim that courts may impose a criminal punishment in the absence of a criminal conviction defies fundamental notions of due process. The Due Process Clauses of both the United States and Iowa Constitutions protect a defendant's presumption of innocence. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Imposing court costs on a defendant whose charges were dismissed is functionally identical to imposing a punishment on a person who is, by law, presumed innocent. A state "may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Nelson v. Colorado*, 581 U.S. 128, 136 (2017).

The United States Supreme Court addressed similar due process concerns in *Nelson v. Colorado*. In that case, two defendants had already paid costs when their convictions were overturned. 581 U.S. at 132–33. They challenged a state statute that imposed burdensome restrictions on their ability to get a refund. *Id.* The Court declared that once a conviction is invalidated, the state has "zero

claim" to the money and may not impose "monetary exactions" on a person "adjudged guilty of no crime." *Id.* at 136, 139. The burdens imposed by the statute, the Court held, violated the Fourteenth Amendment's guarantee of due process. *Id.* at 130. Applied in the present case, the Court's logic operates with equal, if not greater, force for a person whose charges were dismissed without any adjudication of guilt to begin with.

An earlier case, *Giaccio v. Pennsylvania,* hews to this path. 382 U.S. 399 (1966). In *Giaccio,* the defendant challenged a state law that allowed a jury to impose court costs on him even after an acquittal. *Id.* at 401. In striking down the statute, the Court declared the state law unconstitutionally vague and arbitrary, as it essentially allowed the jury to impose costs to punish someone for conduct that did not result in a criminal conviction. *Id.* at 403–04. Two concurring opinions presented their views of the statute's defect at a more fundamental level, with one stating that "allow[ing] a jury to punish a defendant after finding him not guilty . . . violates the most rudimentary concept of due process of law," *id.* at 405 (Stewart, J., concurring), and the other stating that "the Due Process Clause of the Fourteenth Amendment does not permit a State to impose a penalty or costs upon a defendant whom the jury has found not guilty of any offense with which he has been charged," *id.* (Fortas, J., concurring).

The State cannot circumvent due process protections "by the simple label a State chooses to fasten upon its conduct or its statute." *Giaccio,* 382 U.S. at 402. "Labels don't control." *Mueller v. Raemisch,* 740 F.3d 1128, 1133 (7th Cir. 2014) (Posner, J.). A fee or cost is generally viewed as "compensation for a service provided to, or alternatively compensation for a cost imposed by, the person charged the fee." *Id.* The label attached to the financial obligation in a dismissed case—"costs," "fees," "indigent defense fee recoupment," "restitution"—does not

change its character; it is a court-ordered punishment in a criminal case imposed on someone who has not been convicted of the crime.

Nor does it matter what label the court applies to the court's order imposing the penalty—whether "dispositional," "sentencing," or otherwise. What matters is what the order does. Here, the court's order imposed a financial penalty in a criminal case on a person legally innocent of the crime charged. Ordering a monetary sanction against a legally innocent person in effect imposes a sentence where no sentence is permitted. "Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process . . . ." *Giaccio*, 382 U.S. at 402.

The State argues that by entering into the plea agreement, Pagliai "waived" any challenge to the order imposing costs. As an initial matter, it's not hard to understand why a legally innocent defendant might agree to pay costs in exchange for a dismissal. As Justice Scalia observed, our plea-bargaining system "presents grave risks of prosecutorial overcharging that effectively compels an innocent defendant to avoid massive risk by pleading guilty to a lesser offense." *Lafler v. Cooper*, 566 U.S. 156, 185 (2012) (Scalia, J., dissenting). But a defendant's consent to a plea deal does not somehow insulate it from illegality.

In the mid-2000s, in a series of attorney disciplinary cases, we addressed a common plea practice where prosecutors and defendants cut deals to allow defendants to plead guilty to an archaic "cowl lamp" violation instead of the actual crime charged. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Borth*, 728 N.W.2d 205, 208–09 (Iowa 2007); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 179–80 (Iowa 2005); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 367–68 (Iowa 2025). Iowa's now-repealed cowl-lamp

statute prohibited motor vehicles from having "more than two side cowl or fender lamps." Iowa Code § 321.406 (2005), *repealed by*, 2010 Iowa Acts ch. 1045, § 1. Cowl lamps hadn't been installed on automobiles for many decades. *Howe*, 706 N.W.2d at 367. We held that the plea agreements to these sham violations were unlawful. *Borth*, 728 N.W.2d at 209; *Zenor*, 707 N.W.2d at 179–80; *Howe*, 706 N.W.2d at 368–70. "It makes a mockery of the justice system," we declared, "when a defendant is punished for violating a statute that he unquestionably did not violate." *Howe*, 706 N.W.2d at 379. That the defendant agreed to the plea deal didn't negate the underlying illegality. So too here: a person can't waive his right to the presumption of innocence in this way since an agreement to accept a punishment for a crime without a conviction creates an illegal sentence that a court has no power to impose regardless of consent.

The cowl-lamp pleas resulted in punishments untethered to the *correct* crime; the dismissed charges here resulted in punishments untethered to *any* crime. When the State dismisses charges against a person, the person is legally innocent, and the State's ability to impose financial penalties disappears. Guilt is a binary state: you are either guilty or not guilty, and unless convicted, you always remain not guilty. People thus never reside in some in-between place, some guilt purgatory, where they are *somewhat* guilty and thus *somewhat* punishable. Yet deals where defendants pay costs in exchange for dismissal operate under just such a logic.

When the State can impose the costs of its failed prosecutorial efforts on legally innocent defendants, we undermine the protections and benefits of innocence, creating instead "a system in which an acquittal might be nearly as ruinous to the defendant as a conviction." *Schilb v. Kuebel*, 404 U.S. 357, 379 (Douglas, J., dissenting). What's more, assessing costs in the absence of a

conviction leads to the anomalous result that a dismissed defendant often fares worse than a guilty one. This is because a convicted defendant has a statutory right to later contest their ability to pay court-imposed costs, while a dismissed defendant does not. *See* Iowa Code § 910.7(1) (2023) (permitting a defendant to modify payment obligations only "during the period of probation, parole, or incarceration"). Defendants in dismissed cases are stuck with whatever financial punishment the court imposes, regardless of their ability to pay it. *Cf. id.* The legally innocent are thus treated worse—and often pay far more—than the convicted.

"[T]he accused is always presumed innocent until convicted." *Ray v. State*, 1 Greene 316, 318 (Iowa 1848). Costs imposed against a legally innocent person violate the constitutional presumption of innocence protected under the federal and state Due Process Clauses. Because the lack of a conviction leaves the court without power to impose any penalties on the dismissed defendant, the legislature could not authorize a court to impose a sentence on a dismissed charge—even if it wanted to—that complied with due process. So while I respectfully concur in the result that the majority reaches in vacating the unlawful plea agreement and the related orders implementing it, I disagree that the problem is a purely statutory one. The ultimate defect here is one of constitutional dimension.

**Waterman, Justice (dissenting).**

I respectfully dissent. Ronald Pagliai took a plea deal that dismissed two of four charges against him, and he agreed to pay costs on those dismissed counts. He indisputably entered into that plea agreement knowingly, voluntarily, and intelligently, and the district court approved the plea. Plea agreements like Pagliai's have been in widespread use throughout Iowa for many years, supported by precedent from our court that the majority leaves intact today. As an amicus brief of the Iowa County Attorneys Association noted in a prior appeal, "[a]n agreed dismissal at the defendant's cost is a staple of the practice of criminal law in this state." Final Brief of Amicus Curiae Iowa County Attorneys Association at 19, *State v. Mathes*, No. 17–1909, 2020 WL 2267274 (Iowa May 8, 2020), https://www.iowacourts.gov/courtcases/5430/briefs/2632/embedBrief [https://perma.cc/YB62-V63D]. In that earlier appeal, our court split evenly, allowing the practice to continue by operation of law, even in cases where the defendant had not been convicted. *Mathes*, 2020 WL 2267274, at *1 (affirmed by operation of law). Today's case is easier because Pagliai *was* convicted on two counts. I would affirm the dispositional orders approving his agreement to pay costs on the dismissed counts.

The majority correctly decides several legal issues. First, I agree with the majority's conclusion that the dispositional orders at issue are *not* illegal sentences. Second, I agree that a party cannot rely on a plea agreement to uphold an illegal sentence. Third, I agree that the district court had subject matter jurisdiction to enter the dispositional orders. Fourth, I agree that the issue is one of the district court's authority, not its jurisdiction. Fifth, I agree that there currently is no Iowa statute authorizing the district court to order a defendant

to pay costs on dismissed counts. Sixth, I agree with the majority's conclusion that a party generally can waive an objection to the court's lack of authority. So far so good. But the majority fails to take the inescapable next step to hold that Pagliai waived his objection to the district court's lack of authority when he entered into a plea agreement that required him to pay costs on the two dismissed counts. Although it takes that wrong turn, the majority grants the right remedy by allowing the State on remand to elect whether to reinstitute the charges it had dismissed under the plea bargain. *State v. Ceretti*, 871 N.W.2d 88, 97–98 (Iowa 2015). Appellants should be careful what they ask for.

Merely vacating the costs that the defendant agreed to pay on the dismissed counts would rewrite the plea agreement. We should not allow a defendant "to transform what was a favorable plea bargain in the district court to an even better deal on appeal." *Id.* (quoting *State v. Walker*, 610 N.W.2d 524, 526 (Iowa 2000) (en banc)). Pagliai got what he bargained for: the dismissal of two out of four charges in exchange for his payment of costs on those charges.

It is well settled that parties can waive objections to orders that the court enters without statutory authority. *See State v. Emery*, 636 N.W.2d 116, 123 (Iowa 2001) ("Any deficiency in the district court's authority was waived when the defendant failed to object to the district court's adjudication of his case."); *State v. Mandicino*, 509 N.W.2d 481, 483 (Iowa 1993) ("[W]here subject matter jurisdiction exists, an impediment to a court's authority can be obviated by consent, waiver or estoppel." (emphasis omitted)); *Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) ("Applicant cannot deliberately act so as to invite error and then object because the court has accepted the invitation."). The majority fails to follow this precedent.

Instead, the majority marshals string citations to inapposite cases vacating illegal sentences,[1] or vacating sentences with unauthorized terms where there was no plea bargain or where the defendant did not waive his objections to the sentencing court's lack of statutory authority. The majority cites no case directly on point holding that a defendant can't agree to pay costs on a dismissed count. This case is the first to so hold.

One saving grace is that the majority distinguished but did not overrule *State v. McMurry*, 925 N.W.2d 592, 594 (Iowa 2019), and *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991) (per curiam). In those cases, our court recognized that defendants could agree to pay costs on dismissed counts within a single case that included a conviction. *McMurry*, 925 N.W.2d at 601; *Petrie*, 478 N.W.2d at 622; *see also State v. Ruth*, 925 N.W.2d 589, 591 (Iowa 2019) (reversing assessment of costs on dismissed counts because "there was no agreement between the parties for Ruth to pay these costs" and stating that "sentencing courts can no longer routinely order the defendant to pay the court costs [on dismissed counts], unless supported by an agreement between the parties"). In *McMurry*, "we reiterate[d] the observation in *Petrie* that the parties are free to agree to the apportionment of fees and costs in a plea agreement." 925 N.W.2d at 601. In this case, the majority concludes that because Pagliai was charged in four separately numbered cases, *McMurry* and *Petrie* are inapplicable. That is a distinction without a difference when, as here, the parties enter into a global plea agreement resolving all four cases together simultaneously.[2] But in any event,

---

[1]The majority mischaracterizes *State v. Rasmussen*, 7 N.W.3d 357, 360 (Iowa 2024), as involving a dispositional order rather than an illegal sentence. But that unanimous decision made clear that the challenged no-contact order on a dismissed count was in fact an "illegal sentence." *Id.* at 365 ("The defendant is correct in stating that the no-contact order entered in the dismissed simple misdemeanor case involving Victim 3 is an illegal sentence and void.").

[2]We have used a single case number approach, or "whole file basis," in interpreting Iowa Code section 901C, in order to permit "mixed-file expungements" to effectuate the purpose of the

*McMurry* and *Petrie* remain on the books and continue to permit defendants to agree to pay costs on dismissed counts within a single case. Prosecutors can draft trial informations accordingly.[3]

Nevertheless, the majority limits the scope of global plea bargains when charges are brought in multiple cases. Its holding today removes an important tool from the toolbox for prosecutors and defense lawyers alike. As the lawyer for the State argued in this case, assigning costs on dismissed counts allows prosecutors to extend clemency:

> Mr. Pagliai's attorney—Pagliai, excuse me—said it's possible [removing the payment of costs as a bargaining chip] will affect plea bargaining. I disagree. It is absolutely certain that this will affect plea bargaining in a hugely significant way across the state. My second year of law school, I interned in the Linn County Attorney's Office, and it was my job to do [simple misdemeanors] in the basement. I had four cases on the hour every hour for four hours, and I had defendants who--victims who would come in and say, "Y'know what, my younger co-worker, he's thirty years younger than me, punched me in the face over a bet, and if he just apologizes to me, I'm fine to let this go." And you know, if that case involved a property crime—where his glasses were damaged or something where you could get victim pecuniary damages from it—this--it would be a hugely valuable tool for me standing there to say, "Alright, if you apologize, we'll dismiss this at your cost and the court will assess victim pecuniary damages in the amount to replace his glasses or whatever property was injured in the course of that simple assault." That tool is so important to efficient dispositions and not just efficient ones, but ones that extend clemency as well to defendants. This is not just the state trying to get through the inordinate number of cases on a simple misdemeanor docket; this is a tool that prosecutors use every day in the state and have for a long time to extend clemency.

I would allow this beneficial practice to continue.

---

statutes by enabling the applicant to clear his criminal record including dismissed charges. *See Doe v. Iowa Dist. Ct.*, 27 N.W.3d 264, 266–69 (Iowa 2025); *State v. Doe*, 903 N.W.2d 347, 351–55 (Iowa 2017). Those cases are inapplicable here, and the majority does not try to rely on them.

[3]Separate case numbers will be necessary when, for example, the defendant is charged with multiple crimes against one or more victims in different counties.

Of course, the legislature is free to respond to today's decision by reenacting legislation such as Iowa Code section 815.9(4) (2012) to resume the practice by expressly authorizing courts to impose costs on dismissed charges. Notably, in the thirteen years since the repeal of the statute that expressly allowed courts to assess costs on dismissed counts, and in the six years since we reiterated our blessing of plea agreements allowing that practice in *McMurry*, the legislature never enacted a statute prohibiting courts from enforcing such plea agreements. The legislature's silence speaks volumes.

Able counsel for amici in support of Pagliai make excellent policy arguments that court costs impose an undue burden on downtrodden defendants, and the lion's share of the court-ordered costs remain uncollectible while precluding defendants from expunging their criminal records to improve their employability. Iowa is one of the few states that charges jail fees for incarcerated defendants, including those ultimately acquitted. And Iowa is one of the few states to seek reimbursement of attorney fees from indigent defendants. But those policy arguments should be directed to the legislature.

Meanwhile, as a practical matter, today's decision operates only prospectively; it does not allow other defendants to renege on pleas in which they agreed to pay costs and to collaterally attack prior dispositional orders. Postconviction relief is not available to challenge any "alleged error relating to restitution, court costs, or fees under [Iowa Code] section 904.702 or chapter 815 or 910." Iowa Code § 822.2(1)(*g*) (2023). And our court unanimously agrees that dispositional orders such as Pagliai's are not illegal sentences that can be challenged at any time.

Finally, the single-justice concurrence argues that it is unconstitutional to assess costs on Pagliai's dismissed counts. The concurrence relies on inapposite

cases addressing acquittals[4] and nonexistent cowl lamp violations[5]. Pagliai wasn't acquitted of any crime. Nor did he plead guilty to a crime that no longer exists. He was charged with three theft crimes and with resisting arrest. All four charges were supported by probable cause. He pleaded guilty to two of those charges in a combined plea agreement, with the remaining charges dismissed. The concurrence cites no case on point from any jurisdiction holding that it is unconstitutional to assess costs in a situation like Pagliai's. And neither Pagliai nor the amici curiae cite such a case. Dostoevsky wouldn't consider Pagliai, a convicted shoplifter, to be an innocent man. Our court has never held it is unconstitutional to assess costs on dismissed counts as part of a plea bargain with or without a conviction. The concurrence doesn't even attempt to address the fact that Pagliai's plea agreement waived any constitutional claims. *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). The majority decides this case by statutory analysis without relying on the constitutional avoidance doctrine. The concurrence's constitutional argument could carry the day for a defendant who is acquitted of the charges, but that doesn't help Pagliai.

Christensen, C.J., joins this dissent.

---

[4]I agree that it violates due process to impose costs on charges for which the defendant was acquitted. Oddly, the concurrence directs no fire on Iowa Code section 815.9(6) (2023), which allows the imposition of costs following an acquittal.

[5]The problem in the cowl lamp cases was that the plea agreements allowed citations for speeding or other moving violations to be amended to an equipment violation with no factual basis for the amended charge. *See, e.g., Iowa Sup. Ct. Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 367 (Iowa 2005). The defendant was happy to plead guilty to a fake cowl lamp violation to avoid a moving violation on his driving record that could affect his auto insurance premiums or driver's license. *Id.* By contrast, Pagliai pleaded guilty to two of the original charges from his shoplifting spree and the factual basis for his plea is undisputed. The concurrence views each charge in isolation. In my view, the resolution of all four charges under Pagliai's plea agreement should be viewed wholistically. To use the concurrence's chosen term, Pagliai agreed to pay costs on his dismissed theft charges that were "tethered" to his convictions.